NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

JUSTIN C., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, S.C., *Appellees*.

No. 1 CA-JV 15-0136
FILED 12-1-2015

Appeal from the Superior Court in Apache County
No. S0100JD201300001
The Honorable Donna J. Grimsley, Judge Pro Tem

**AFFIRMED**

COUNSEL

Law Office of Devin Brown, St. Johns
By Devin Brown
*Counsel for Plaintiff/Appellant*

Arizona Attorney General's Office, Mesa
By Amanda Adams
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Jon W. Thompson delivered the decision of the Court, in which Presiding Judge Randall M. Howe and Judge Lawrence F. Winthrop joined.

---

**T H O M P S O N**, Judge:

¶1　　　　Justin C. (Justin) appeals from the juvenile court's order terminating his parental rights to his daughter S.C.　For the following reasons, we affirm.

**FACTUAL AND PROCEDURAL HISTORY**

¶2　　　　S.C. was born in January 2012.　Justin and S.C.'s mother, D.H., were never married.[1]　S.C. came into the care of the Department of Child Safety (DCS)[2] after DCS received a referral that S.C. and her seven-year-old half-brother had been neglected.　When DCS contacted Justin and D.H. in January 2013, D.H. admitted to using methamphetamine and Justin admitted to using marijuana on a regular basis.　DCS allowed S.C. to remain in the home with D.H. and Justin, but the next day Justin attempted to choke D.H. and hit her in the face while she was holding S.C.　Police arrested Justin, who was already on probation for assault.　DCS took custody of S.C. and placed her in a foster home along with her brother.

¶3　　　　DCS filed a dependency petition and in January 2013 the juvenile court found that S.C. was a dependent child as to both Justin and D.H.　The court approved a case plan of family reunification, and DCS put services into place.　Justin's participation in services was inconsistent, and in January 2014, the juvenile court approved a case plan of severance and adoption.　DCS filed a severance motion, and the court held a contested severance trial over three days in the fall of 2014 and in January 2015.　The court terminated Justin's parental rights pursuant to Arizona Revised

---

[1] D.H.'s parental rights were previously terminated; she is not a party to this appeal.

[2] The Arizona Department of Economic Security originated this action but was later replaced by the Department of Child Safety.　*See* S.B. 1001, 51st Leg., 2d Spec. Sess. (Ariz. 2014).　We refer to both entities as "DCS."

Statutes (A.R.S.) sections 8-533(B)(8)(a) (Supp. 2012) (nine months' out of home placement) and 8-533(B)(3) (substance abuse). Justin timely appealed. We have jurisdiction pursuant to A.R.S. §§ 8-235 (2010), 12-120.21(A)(1) (2010), and -2101 (A)(1) (Supp. 2012).

## DISCUSSION

**¶4** On appeal, Justin argues that insufficient evidence supported the juvenile court's findings concerning both of the statutory grounds for severance (nine months' out of home placement and substance abuse). He does not appeal from the juvenile court's best interest finding.

**¶5** "We will not disturb the juvenile court's order severing parental rights unless its factual findings are clearly erroneous, that is, unless there is no reasonable evidence to support them." *Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 377, ¶ 2, 982 P.2d 1290, 1291 (App. 1998) (citations omitted). We view the facts in the light most favorable to sustaining the juvenile court's ruling. *Lashonda M. v. Ariz. Dep't of Econ. Sec.*, 210 Ariz. 77, 82, ¶ 13, 107 P.3d 923, 928 (App. 2005). We do not reweigh the evidence, because "[t]he juvenile court, as the trier of fact in a termination proceeding, is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and make appropriate findings." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4, 53 P.3d 203, 205 (App. 2002) (citation omitted). The juvenile court may terminate a parent-child relationship if DCS proves by clear and convincing evidence at least one of the statutory grounds set forth in A.R.S. § 8-533(B). *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12, 995 P.2d 682, 685 (2000). The court must also find by a preponderance of the evidence that severance is in the child's best interests. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22, 110 P.3d 1013, 1018 (2005).

### A. Nine Months' Out of Home Placement

**¶6** Under A.R.S. § 8-533(B)(8)(a), the juvenile court may terminate a parent-child relationship if DCS "made a diligent effort to provide appropriate reunification services," the child was in an out-of-home placement for nine months or longer, and the parent substantially neglected or willfully refused to remedy the circumstances that caused the child to remain out of the home. DCS "is not required to provide every conceivable service or to ensure that a parent participates in each service it offers." *Maricopa Cty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353, 884 P.2d 234, 239 (App. 1994). DCS fulfills its statutory mandate to diligently provide appropriate reunification services when it "provide[s] [a parent]

with the time and opportunity to participate in programs designed to help [the parent] become an effective parent." *Id.* "To 'substantially [neglect] or willfully [refuse] to remedy a circumstance,' a parent must be aware that [DCS] alleges that the circumstance exists and is one that, if it continues to exist at severance, may result in the termination of [the parent's] parental rights." *Marina P. v. Dep't of Econ. Sec.*, 214 Ariz. 326, 332, ¶ 35, 152 P.3d 1209, 1215 (App. 2007) (citation omitted).

**¶7** At the time DCS filed its severance motion in February 2014 S.C. had been in an out-of-home placement for approximately thirteen months, and by the last day of trial she had been in care for approximately two years. During the dependency, DCS requested that Justin participate in substance abuse assessment and treatment services, random drug testing, parenting classes, parent-aide services, and visitation. From the outset of the dependency, DCS also informed Justin he would need to "demonstrate an ability to parent . . . without violence in the home and an ability to provide the basic needs of [S.C.] such as shelter, food and clothing."

**¶8** Justin completed the substance abuse assessment in January 2013. The intake worker who completed the assessment recommended that Justin begin an intensive outpatient substance abuse treatment, that he participate in domestic violence classes, and that he attend parenting classes. Justin began attending the intensive outpatient sessions, but his attendance was "very inconsistent" until 2014. He missed nearly half of the sessions he was expected to attend in 2013. His attendance improved in 2014, although he missed several sessions. Justin's substance abuse counselor, W.G., testified that even after Justin's attendance improved, he continued to deny that he had a substance abuse problem and was there "just to get [S.C.] back." By the last day of trial, Justin had completed the outpatient treatment program, but still needed to complete an aftercare program.

**¶9** Justin tested positive for opiates in February, March, May, October and December 2013. In May 2013 he tested positive for methamphetamine and twice tested positive for marijuana. He tested positive for marijuana in November 2013, and as a result of that positive test and because he was found to possess alcohol, he served a total of fourteen days in jail in January and February 2014 for violating his

probation. He tested positive for opiates twice and methamphetamine once in January 2014.[3] In May and September 2014 he tested positive for opiates.

¶10 Justin's probation officer, A.O., testified that Justin had been on intensive probation since July 2013, after he assaulted D.H. As part of his probation, Justin was required to participate in both intensive outpatient substance abuse counseling and domestic violence counseling. A.O. testified that Justin was closed out of domestic violence treatment in 2013, attended four domestic violence sessions in 2014, and missed one session. A.O. explained that, as of the date of her testimony in September 2014, Justin had not successfully completed domestic violence treatment because he still had about thirteen of twenty-six sessions to complete. However, on the last day of trial four months later, Justin testified that he had completed twenty-five sessions and would complete his last session within a week.

¶11 Justin completed a psychological evaluation with Dr. Shane Hunt, a licensed psychologist, in December 2013. Dr. Hunt diagnosed Justin with antisocial personality disorder, ADHD, intermittent explosive disorder, alcohol abuse in early partial remission, cannabis use in early partial remission, and amphetamine abuse in early partial remission. Dr. Hunt opined that Justin had a limited ability to make appropriate decisions that would be in a child's best interest, let alone his own best interest:

> I'm very concerned in regards to [Justin] not having the emotional regulation to be able to take care of his own needs and keep himself out of . . . trouble . . . much less putting children in his care. You know, it's the hostility and the anger, the poor temperament, the difficulties in . . . making what I would call responsible

---

[3] By January 2014, the DCS case manager had spoken with Justin and advised him that DCS had not been provided with a prescription for opiates (hydrocodone or oxycodone) although he had been testing positive for both of those drugs. Justin did not provide a prescription for opiates until August 2014, when he provided his probation officer with a prescription for hydrocodone. Subsequently, Justin's treating physician stopped prescribing Justin opiates after the probation department informed the doctor about Justin's history of substance abuse. Justin's substance abuse counselor, W.G., testified that continued use of opiates, even with a prescription, presented a potential problem due to a high potential for cross-addiction.

choices are all concerns that I would have in regards to [Justin's] minimal and adequate parenting. And I think it directly impacts that and it limits his ability to . . . make appropriate decisions that would be in his children's best interest, or even in his own best interest.

Dr. Hunt opined that there was a "high possibility" of abuse or neglect for a child placed in Justin's care. He further testified that Justin would need to demonstrate a year of sobriety before S.C. could be returned to his care.

¶12        S.S., the parent aide assigned to supervise Justin's visits with S.C. and provide him with hands-on parenting lessons, testified that during visits Justin failed to consistently demonstrate hands-on parenting techniques during the visits, and relied on his parents to meet S.C.'s basic needs.

¶13        DCS case manager C.C. testified that Justin had failed to make the necessary behavioral changes to have S.C. returned to his care. She testified that Justin's substance abuse problem was unresolved and agreed with Dr. Hunt's opinion that Justin needed to demonstrate a year of sobriety before S.C. could be returned to his care. She testified that Justin would need to completely finish an entire substance abuse treatment program. C.C. noted that Justin had only been employed for a few weeks in October or November 2014 and that he had failed to obtain appropriate housing. C.C. testified that without a job and appropriate housing Justin was unable to meet S.C.'s basic needs.

¶14        Based on all of the evidence, the trial court concluded that S.C. had been cared for in an out of home placement for more than nine months and Justin substantially neglected or willfully refused to remedy the circumstances causing S.C. to remain in care. The court found:

> [F]ather substantially refused or willfully neglected to engage in substance abuse until the child had been in care 17 months and still has not completed services or exhibited the behavioral skills necessary for the child to be safely returned. Father had not completed domestic violence classes as of January 16, 2015, although [he] was close to completion. Father did not engage in parenting classes, so the parent aid fashioned individual classes for him

6

> during visits and transport, but no certificate of completion was received. Father continued to exhibit the detrimental behaviors noted in the psychological evaluation, even at the time of the trial. He has not engaged in counseling services to address his mental health issues. He continues to blame others. He does not take any responsibility for his own actions that caused the child to be in car[e]. He continues to rely on his parents to provide food for his child. Father's late efforts at engaging in services are not sufficient to demonstrate to the court that he has met the behavioral changes necessary for the child to be safely returned to him.

The evidence was sufficient to support the severance order under A.R.S. § 8-533(8)(a). While Justin made some efforts to comply with the caseplan, those efforts were "too little, too late." *See Maricopa Cty Juv. Action No. JS-501568*, 177 Ariz. 571, 577, 869 P.2d 1224, 1230 (App. 1994). Although Justin argues that the juvenile court improperly discounted his good faith efforts and focused just on the first nine months that S.C. was in care, the record instead shows that the juvenile court looked at Justin's efforts from the outset of the dependency and up until the last day of trial. As noted by the trial court, the only program that Justin actually completed during the entire dependency was one portion of the drug treatment program. He failed to demonstrate a year of sobriety and did not demonstrate that he could meet S.C.'s basic needs.

## B. Reunification Services

¶15 Justin further argues that DCS failed to make diligent efforts to provide appropriate reunification services. Reasonable evidence supports the juvenile court's finding that DCS made diligent efforts to provide reunification services, however. DCS gave Justin "the time and opportunity" to participate in services designed to help him parent, including a psychological evaluation, outpatient drug treatment, urinalysis testing, and parent aid services. Although Justin complains that DCS failed to provide him with employment assistance, housing assistance, and transportation assistance[4], DCS is not required to provide a parent with

---

[4] Justin's mother testified that he received gas cards from Catholic Services so he could attend his domestic violence classes.

every conceivable service. *See Maricopa Cty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353, 884 P.2d 234, 239 (App. 1994).

**¶16** Because we affirm the court's order granting severance on the basis of nine months in an out-of-home placement, we need not address Justin's argument concerning A.R.S. § 8-533(B)(3).

## CONCLUSION

**¶17** For the foregoing reasons, the juvenile court's severance order is affirmed.



Ruth A. Willingham · Clerk of the Court
FILED: ama