NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

VERONICA E., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, B.H., H.H., S.H., *Appellees*.

No. 1 CA-JV 15-0306
FILED 6-9-2016

---

Appeal from the Superior Court in Maricopa County
No. JD 508935
The Honorable Janice K. Crawford, Judge

**AFFIRMED**

---

COUNSEL

Denise Lynn Carroll, Esq., Scottsdale
By Denise Lynn Carroll
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Nicholas Chapman-Hushek
*Counsel for Appellee, Department of Child Safety*

_____

**MEMORANDUM DECISION**

Presiding Judge Margaret H. Downie delivered the decision of the Court, in which Judge Kent E. Cattani and Judge Donn Kessler joined.

_____

**D O W N I E**, Judge:

¶1          Veronica E. ("Mother") appeals from an order terminating her parental rights to B.H., S.H., and H.H. (collectively, "the children"). For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

¶2          On November 2, 2013, the Department of Child Safety ("DCS") received a report that Mother and the children's father were engaging in domestic violence. That same day, Mother tested positive for methamphetamine. DCS took the children into temporary custody and offered Mother services to address domestic violence, substance abuse, housing, and parenting issues.

¶3          Mother minimally participated in services. As of May 27, 2014, she had missed 50% of her required drug tests and had tested positive for methamphetamine on numerous occasions. Mother was resistant to outpatient drug treatment at TERROS, "fail[ed] to follow through with appointments, lack[ed] motivation and participate[d] minimally." As a result, inpatient treatment was recommended.

¶4          Mother was referred to TERROS' Maverick House for inpatient treatment. But her stay at that facility was short-lived. Mother told her parent aide she was "discharged from Maverick House because she [did] not need such intense treatment." TERROS, however, reported that Mother was involuntarily discharged due to her inappropriate behavior.

¶5          In addition to ongoing concerns about substance abuse, as of October 2014, when the case plan changed to severance and adoption, Mother had failed to maintain safe, stable housing or demonstrate appropriate parenting skills, and she had not resolved her domestic violence issues. Services ceased in September 2014 when Mother was sentenced to nine months in jail.

¶6          DCS moved to terminate Mother's parental rights in December 2014. A severance trial occurred after Mother's release from jail.

DCS case manager Mead testified that, given Mother's history of substance abuse, a minimum of one year's sobriety was necessary for the agency to consider returning the children. Although Mother completed a substance abuse program in jail, DCS remained concerned about domestic violence and Mother's ability to parent the children and provide stable housing.

¶7            During her severance trial testimony, Mother refused to accept any responsibility for the children's removal; she placed "a lot of blame on [her] situation with the case manager and other people." Mother denied neglecting the children "in any kind of way," despite the fact they were exposed to domestic violence, had lice and "major tooth problems," and lacked basic hygiene skills when taken into care. Additionally, at least two of the children were "very behind" on their immunizations. When asked who was responsible for the circumstances culminating in the termination proceedings, Mother responded, "I put blame on [DCS], on them not helping me enough –– not giving me enough resources, not being there for me, not helping me with the help that I asked for." Mother denied any substance abuse problems before moving to Arizona in 2012, though evidence of record reflects she completed a substance abuse program in 2007 during a dependency proceeding in Nevada and, by her own self-report, began using drugs at age 15. On this point, the superior court concluded:

> Mother has a significant substance abuse history. Although Mother testified that she only used methamphetamines since moving to Arizona and only tried cocaine and marijuana a few times, the Court finds Mother's disclosures to Terros as set forth in Exhibit 17 to be more credible than Mother's testimony. Based on the credible evidence, Mother's substance use began when Mother was approximately 12 at which time Mother was introduced to cocaine by her parents. Mother continued to use cocaine until she was approximately 17 at which time Mother became incarcerated.

¶8            The superior court terminated Mother's parental rights based on 15 months' time-in-care and chronic substance abuse. Mother timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 8-235(A), 12-120.21(A)(1), and 12-2101(A)(1).

## DISCUSSION

### I. Fifteen Months' Time-In-Care

¶9 To terminate parental rights based on 15 months' time-in-care, the court must find by clear and convincing evidence that DCS "made a diligent effort to provide appropriate reunification services," the children have been "in an out-of-home placement for a cumulative total period of fifteen months or longer pursuant to court order," and "the parent has been unable to remedy the circumstances that cause[d] the child[ren] to be in an out-of-home placement and there is a substantial likelihood that the parent will not be capable of exercising proper and effective parental care and control in the near future." A.R.S. § 8-533(B)(8)(c); *see also* § 8-537(B) (grounds for termination "shall be based upon clear and convincing evidence").

¶10 We review the superior court's order for an abuse of discretion and will not disturb it "unless the court's findings of fact were clearly erroneous, i.e., there is no reasonable evidence to support them." *Maricopa Cty. Juv. Action No. JV-132905*, 186 Ariz. 607, 609 (App. 1996). Because the superior court is in the best position to evaluate witness credibility and weigh conflicting evidence, we defer to its judgment on such matters. *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002).

¶11 Mother does not dispute that, at the time of the severance trial, the children had been in out-of-home placements in excess of 15 months. She argues instead that the court erred in terminating her rights because "she had made significant progress in her sobriety."

¶12 When terminating parental rights under the 15 months' time-in-care ground, the court focuses on the parent's success in remedying the circumstances that led to the out-of-home placement. *See, e.g.*, *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, 96, ¶¶ 17, 31 (App. 2009) (if DCS offered services "designed to improve the parent's ability to care for the child," evidence showing "a parent's progress, or lack thereof," is critical). Mother's reported "significant progress in her sobriety" is relevant, but not dispositive. At the time of trial, Mother was living in a halfway house. Although she was sober in that environment, based on her previous periods of sobriety followed by relapse, DCS and the court were reasonably concerned about her ability to sustain sobriety in the "real world." Indeed, the court found that Mother is "at high risk of relapse" and "has a very poor ability to tolerate or cope with problems."

4

¶13　　　　Furthermore, the concerns that led to the children's removal encompassed more than Mother's substance abuse. Mother failed to participate in offered services before her incarceration to address parenting skills and her history of domestic violence. Additionally, Mother did not "meet her objectives" when working with the parent aide. She canceled several one-on-one skills sessions with the aide and was warned numerous times about her inappropriate behavior during visits with the children. Even after her release from jail, Mother continued to communicate with the children inappropriately, leading the superior court to conclude she "has a pattern and practice of disregarding rules and blaming others for her transgressions."

¶14　　　　Although the superior court recognized that Mother participated in a substance abuse program while incarcerated and had maintained sobriety for two months after release, it deemed her efforts "sporadic until very recently." We have previously held that tardy, good-faith efforts may be insufficient to prevent termination. In *Maricopa County Juvenile Action No. JS-501568*, for example, we affirmed a severance order even though the mother had been sober for the eight months preceding the severance trial. 177 Ariz. 571, 577, 580 (App. 1994). We emphasized that a parent should "begin overcoming their addiction and assuming their parental responsibilities as soon as possible." *Id.* at 577. "Leaving the window of opportunity for remediation open indefinitely is not necessary, nor do we think that it is in the child's or the parent's best interests." *Id.*

¶15　　　　Although late-stage efforts may be objectively commendable, they may also be "too little, too late." *See id.* Such is the case here. The court reasonably concluded that before the children could be safely returned to Mother's care, she would need to demonstrate at least 12 months of post-incarceration sobriety. Yet as the DCS case worker testified, continuing the dependency proceedings "would only prolong the [children's] instability."

¶16　　　　Mother also argues DCS did not offer services she needed before her incarceration. The record does not support this contention, and the superior court found Mother's testimony about the purported inadequacy of services unpersuasive. Mother testified she called Mead "all the time" seeking a domestic violence class referral but she never received it. The record reflects, though, that the parent aide consulted with Mother about domestic violence resources, including shelters, and gave her relevant information, including identification of necessary behavioral changes. Mother also acknowledged she could have obtained individual counseling through TERROS, but opined that it "would have been with a

counselor that was not an addict and didn't know anything about drug use." Mother's subjective views do not excuse her failure to at least attempt to utilize the offered counseling services.

**¶17** The superior court reasonably concluded that DCS "made a diligent effort to provide appropriate reunification services," that Mother failed to remedy the circumstances that led to out-of-home placement, and that she would not be capable of exercising proper parental control in the near future. Because we affirm the 15 months' time-in-care basis for termination, we need not reach the additional ground for severance found by the superior court. *See Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 376–77, ¶ 14 (App. 2010).

## II.    Best Interests

**¶18** In addition to finding a statutory ground for termination, the superior court must also find, by a preponderance of the evidence, that termination is in the children's best interests. *Raymond F.*, 224 Ariz. at 377, ¶ 15. Termination is appropriate if the children "would be harmed if the relationship continued or would benefit from the termination." *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4, ¶ 16 (2016). "Factors considered are whether: 1) an adoptive placement is immediately available; 2) the existing placement is meeting the needs of the child; and 3) the children are adoptable." *Raymond F.*, 224 Ariz. at 379, ¶ 30.

**¶19** The superior court concluded that severing Mother's parental rights would benefit the children and failing to do so would harm them. It found Mother was "at a high risk of relapse," which placed the children "at risk of being exposed to drug use." The court further found that termination would provide the children "with a safe stable permanent home free of substance abuse, mental health issues, and domestic violence." The court expressed concern that Mother would not "acknowledge or recognize the emotional harm the Children have suffered as a result of being exposed to the domestic violence and substance abuse."

**¶20** The DCS case worker testified that the youngest child — S.H. — was in a home that was willing to adopt her. H.H. and B.H. were placed together in a long-term foster home that was meeting their needs, though it was not an adoptive placement. At the time of the trial, H.H. was nine years

old, and B.H. was 13 years old. Mead opined that both children were adoptable.[1] She described them as "happy, bright, smart, [and] caring."

¶21         Based on the record before it, the superior court reasonably concluded that termination of Mother's parental rights was in the children's best interests.

**CONCLUSION**

¶22         We affirm the judgment of the superior court.



Ruth A. Willingham · Clerk of the Court
F I L E D : AA

---

[1]     Mead testified that B.H. had given her consent to adoption the day before trial. Between the first and second day of the trial, however, B.H. wrote a letter stating, in pertinent part: "These past couple of visits have been amazing and I miss my mom a lot and I cant loose her I cant get adopted if anything I want to stay with the foster family I'm with now until my mom can get a house in buckeye so no adoption . . . ."   (Errors in original.)

Given B.H.'s changed position, Mother and DCS asked the court to hold the termination decision as to B.H. "in abeyance." The court declined to do so, but stated it would consider the letter. In its best interests findings, the superior court discussed B.H.'s wavering position about adoption, concluding:

> With Mother currently being sober, it is understandable that [B.H.] would vacillate on wanting to be adopted. [B.H.] has previously expressed her fear of reunifying with Mother and having the same cycle repeat again. The cycle of incarceration, substance abuse, and domestic violence have been a cycle that these Children have observed most of their lives.

The court was required to consider B.H.'s position, and it did so. We find no error stemming from the court's refusal to hold the proceedings in abeyance as to B.H. or from the best interests finding as to B.H.