869 P.2d 1224

**In the Matter of the APPEAL IN MARICOPA COUNTY JUVENILE ACTION NO. JS–501568.**

**No. 1 CA–JV 93–0030.**

Court of Appeals of Arizona, Division 1, Department E.

March 8, 1994.

---

Kessler & Doyle by Eric W. Kessler, Mesa, for appellant.

Hendrickson & Fuller by Richard T. Fuller, Mesa, Guardian ad litem for Natural Mother.

Helm & Kyle, Ltd. by Margaret R. Tinsley, Tempe, for appellee ADES.

Mary C. McDonald, Glendale, for Child.

## OPINION

VOSS, Presiding Judge.

In this case, appellant asks us to reverse the juvenile court's termination of her parental rights with respect to her daughter. We hold that Arizona law permits a trial court to terminate parental rights when a parent's drug addiction has caused the initial removal of her child by the State and the parent substantially neglects to remedy her addiction for more than a year after the removal.

### FACTS AND PROCEDURE

A daughter was born to appellant on October 9, 1989, in Phoenix, Arizona. The child was appellant's fourth. At the time of her child's birth, appellant had a ten-year history of dependency on and abuse of heroin, cocaine, and alcohol. As a result, the child was born prematurely and drug-addicted and remained in intensive care approximately one month. When the child was ready to be released, appellant, because of her ongoing drug and alcohol abuse, was unable to care for the child. Appellant orally agreed to the child's placement with Child Protective Ser-

vices (CPS), but then disappeared before signing the temporary voluntary placement agreement.

Because attempts to locate appellant concerning her child were unsuccessful, the Arizona Department of Economic Security (ADES) filed a dependency petition on November 13, 1989, making the child a temporary ward of the court and placing her in the legal custody of ADES and CPS. Appellant made no contact with CPS until December 21, 1989, when she sent CPS a letter through a third party at the Salvation Army Adult Rehabilitation Program in which she was enrolled.

In January 1990, appellant left the Salvation Army program without completing rehabilitation and moved to California, where she reverted to her prior pattern of substance abuse. On February 26, 1990, the child was found dependent and made a permanent ward of the court and has remained such until the present. After moving to California, appellant made no further contact with CPS until August 27, 1990 (over eight months later) when she asked to speak with a CPS caseworker about the child. At this time, appellant was enrolled in an outpatient methadone maintenance program in Phoenix. The caseworker scheduled several appointments, but appellant did not appear for any of them until September 27, 1990.

A visit between appellant and the child was scheduled in October. Appellant, however, was unable to visit the child because appellant was incarcerated and, as she put it, forced to "detox." Eventually, in November 1990, appellant had two brief visits with her daughter. The following month, in a review hearing, the court made future visitation conditional on thirty days of drug-free urinalysis tests and a showing of stability by appellant through activities such as maintaining regular contact with her caseworker and attending scheduled parenting classes. Because appellant failed to comply with these requirements, no more visits with the child were scheduled.

On January 11, 1991, appellant began her third drug rehabilitation program, this time at New Casa de Amigas. She left this program prematurely in late February and CPS once again lost contact with her until she contacted her caseworker approximately a month later. After re-establishing contact and meeting with appellant several times in April, appellant's caseworker arrived at appellant's home on May 13, 1991, to take her to a scheduled psychiatric evaluation. Appellant refused to go and stated that she had "been drinking again" and wanted to "sign the papers to put [the child] up for adoption." The caseworker arranged to meet with appellant the following day to sign relinquishment papers, but appellant never appeared.

Shortly after this, appellant returned to California and made no further contact with CPS or the child for over sixteen months. During this period, ADES's case plan for the child was changed to severance and the child was moved from a foster home to a foster-adopt home. Toward the end of this sixteen-month period, on July 20, 1992, appellant (then eight months pregnant with her fifth child) enrolled in the Options for Recovery program in San Diego, California, the same day that ADES filed its petition for severance. Appellant finally called her CPS caseworker in September of 1992. Appellant, during this call, again stated she was willing to sign a relinquishment form. However, appellant did not return the form CPS sent her.

The parental rights of the child's alleged natural father (or any other person claiming to be the child's father) were terminated on October 7, 1992. The parental rights of the child's legal father (appellant's spouse) were terminated on December 9, 1992. The sole remaining issue—whether appellant's parental rights as the child's natural mother should be terminated—was adjudicated at a severance hearing held on April 5–7, 1993. At the hearing, appellant testified that she had been clean and sober since July 17, 1992. On May 3, 1993, the court granted ADES's petition for severance on the grounds that appellant had substantially neglected to remedy her drug abuse during more than a year of out-of-home placement and that appellant had abandoned the child. Appellant timely appealed this decision.

## ISSUES

Appellant raises two issues on appeal:

A. Did the trial court misinterpret the language of Ariz.Rev.Stat.Ann. (A.R.S.) section 8–533(B)(6)(a) (1989), in finding that during more than a year of the child's out-of-home placement, appellant's conduct amounted to substantially neglecting to remedy her drug problem; and

B. Did the trial court abuse its discretion in finding by clear and convincing evidence that appellant abandoned the child?

## DISCUSSION

Appellant contends the court improperly and unfairly applied A.R.S. section 8–533(B) in terminating her parental rights. Appellant argues that the court, by its ruling, ignored her successful efforts at rehabilitation in the months before the severance hearing and, in essence, was holding that parties in her position had to successfully "remedy" their drug problem within a year after their child is taken away or risk losing their child altogether. We disagree.

■ Under section 8–533, a trial court may properly order the termination of parental rights only upon finding that one of the enumerated grounds has been satisfied and that termination would be in the best interests of the child. *In re Appeal in Maricopa County Juvenile Action No. JS–500274*, 167 Ariz. 1, 804 P.2d 730 (1990). Here, the juvenile court found two statutory grounds: abandonment under section 8–533(B)(1), and substantially neglecting to remedy the problem that caused the out-of-home placement under section 8–533(B)(6)(a). The trial court also found that termination of appellant's parental rights would be in the child's best interests. We first address the court's findings that appellant substantially neglected to remedy her substance abuse during more than a year of out-of-home placement and that she abandoned the child. We will then turn to the issue of whether severance served the best interests of the child.

## A. *Substantially Neglecting to Remedy*

Termination of parental rights can occur after the first year of court-ordered, out-of-home placement when a parent refuses or substantially neglects to remedy the circumstances that caused the removal of his or her child by ADES. A.R.S. § 8–533(B). The statute states, in pertinent part:

B. Evidence sufficient to justify the termination of the parent-child relationship shall include any one of the following ...:

. . . .

6. [T]he child is ... under the supervision of the juvenile court ... [and] the agency responsible for the care of the child has made a diligent effort to provide appropriate remedial services and ...:

(a) The child has been in an out-of-home placement for a cumulative total period of one year or longer pursuant to court order and the parent has substantially neglected or willfully refused to remedy the circumstances caus[ing] the ... out-of-home placement.

*Id.*

The trial court made the following findings and conclusions with regard to this subsection:

The one year requirement clearly has been met.... The circumstances that caused the child to be placed out of the home were the mother's drug abuse and failure to keep in contact with ADES.... [T]he Court finds that [appellant] substantially neglected or willfully refused to remedy those circumstances prior to the filing of the petition....

THE COURT ALSO FINDS that ADES has made diligent efforts to provide appropriate remedial services. [Appellant] was offered drug rehabilitation, parenting classes and counseling.

Appellant does not contend ADES was not diligent, nor does she take issue with the court's finding that the one year requirement was satisfied. Appellant argues only that the court's findings and conclusions with regard to substantial neglect constitute a misinterpretation of section 8–533(B)(6).

■ In appellant's view, this section should not be used to sever parental rights unless a parent has made *no* effort to remedy the situation that caused the out-of-home placement. Under this standard, appellant argues her attempts at rehabilitation during that first year, although unsuccessful, should still exempt her from severance. Appellant also argues that the trial court incorrectly interpreted subsection (B)(6)(a) as requiring actual remediation within one year of the problem causing removal of the child. We cannot agree with either of these propositions.

First, the plain language of the statute indicates that parents risk having their parental rights terminated if they have "*substantially* neglected or willfully refused to remedy" the circumstances causing out-of-home placement. A.R.S. § 8–533(B)(6)(a) (emphasis added). Termination is not limited to those who have *completely* neglected or willfully refused to remedy such circumstances. Therefore, appellant's suggested reading is untenable.[1] Second, there is nothing in the record to indicate that the trial court's ruling was based on appellant's failure to completely overcome her addiction during the first year the child was in foster care.

To the contrary, the trial court specifically found "[t]he circumstances that caused the child to be placed out of the home were the mother's drug abuse and failure to keep in contact with ADES" and found appellant had "*substantially neglected* . . . to remedy those circumstances. . . ." (Emphasis added.) The trial court noted:

> Except for two periods of sobriety, the longest of which was 60 days, [appellant] continuously abused drugs or alcohol from the time of the child's birth until September 1992.
>
> . . . .
>
> . . . [A]nd during the period from the child's birth until September 1992, [appellant] was not around and her whereabouts were unknown for 26 months.

■ On review, we accept the juvenile court's findings of fact in support of severance unless they are clearly erroneous. *In re Appeal in Pima County Severance Action No. S–1607*, 147 Ariz. 237, 238, 709 P.2d 871, 872 (1985). Here, the record fully supports the trial court's factual findings. During the child's first year, appellant dropped out of three different rehabilitation programs after only brief participation and made little effort to stay in contact with either her caseworker or the child. After reviewing the record, it is clear to us that during the first thirty-three months of her child's life, appellant's primary focus was on procuring and using drugs. Appellant expended only minimal effort toward remedying her addiction, keeping in contact with CPS, or establishing a relationship with her daughter.

■ Thus, we find no clear error in the trial court's holding, based on its factual findings, that appellant's conduct during the relevant period constituted substantially neglecting to remedy the circumstances causing out-of-home placement. The trial court's approach is consistent with our reading of the statute. Under section 8–533(B)(6)(a), parents who make appreciable, good faith efforts to comply with remedial programs outlined by ADES will not be found to have substantially neglected to remedy the circumstances that caused out-of-home placement, even if they cannot completely overcome their difficulties (in this case, addiction) within one year after their children are placed in the custody of the State. However, when a party, like appellant, disappears for months at a time and makes only sporadic, aborted attempts to remedy her addiction in that first year, a trial court is well within its discretion in finding substantial neglect and terminating parental rights on that basis.

---

1. Because the statute creates a negative standard (substantial neglect), it is difficult to define the level of effort that would exempt a parent from severance. Semantically, substantial compliance is not the opposite of substantial neglect. The opposite of neglect is care, attention, or heed. The dictionary defines substantial as "considerable in . . . amount." American Heritage Dictionary 1791 (3d ed. 1992). The opposite of this is insubstantial, trivial, or de minimus. Thus, compliance under subsection (B)(6)(a) sufficient to avoid severance requires, at a minimum, something more than trivial or de minimus efforts at remediation.

Appellant, however, argues that termination was unfair in light of her successful efforts at rehabilitation in the eight months prior to the severance hearing and that her sobriety during that period should exempt her from severance under section 8–533. Thus, the following question is before us: if a trial court finds that a parent substantially neglected to remedy her addiction during more than a year of out-of-home placement, may the court grant severance on that basis even though the parent eventually begins a successful recovery before the severance hearing? We believe the answer is yes.

Section 8–533(B) allows the trial court to base its decision on *any* of the grounds enumerated in the statute. Thus, once children have been placed in the custody of the State, parental rights are terminable based on *either* substantially neglecting to remedy one's addiction for a year or more, or ultimately failing to remedy the addiction within two years.[2] This section was written "in response to the increasing number of children in foster care whose parents maintain parental rights but refuse to assume their parental responsibilities." *In re Appeal in Maricopa County Juvenile Action No. JS–6520*, 157 Ariz. 238, 243, 756 P.2d 335, 340 (App.1988). Its express purpose is to "expedite the adoption of numerous children who remain in temporary foster care ... and in so doing promote a stable and long term family environment for these children." *Id.*

Clearly, the legislature's purpose was to give children who are placed outside the home the opportunity to bond with stable parents after a reasonable period of time, instead of being shuttled from one foster family to the next for as long as it takes their biological parents to assume their responsi-

bilities and take positive steps toward recovery. *Id.* We believe enforcement of the time limits in section 8–533(B)(6) furthers this purpose by expediting adoption. It also serves a second purpose by giving parents an incentive to begin overcoming their addiction and assuming their parental responsibilities as soon as possible.

Leaving the window of opportunity for remediation open indefinitely is not necessary, nor do we think that it is in the child's or the parent's best interests. *See In re Appeal in Maricopa County Juvenile Action No. JS–4283*, 133 Ariz. 598, 601, 653 P.2d 55, 58 (App.1982) ("[The State's] responsibility to make all reasonable efforts to preserve the family relationship ... [is] not without limits ... at some point the mother [is] required to make a good faith effort to reunite the family."). Thus, we agree with the trial court. Appellant's successful efforts at recovery in 1992, while commendable, were "too little, too late" for purposes of this severance action.

### B. *Abandonment*

Appellant contends the trial court erred in finding that she abandoned her child as defined by A.R.S. section 8–533(B)(1). Abandonment under section 8–533(B)(1) exists where there is "clear and convincing evidence of intentional conduct on the part of a parent that evinces a settled purpose to forego all parental duties and relinquish all parental claims to the child." *Maricopa County Juvenile Action No. JS–500274*, 167 Ariz. at 4, 804 P.2d at 733; *Pima County Severance Action No. S–1607*, 147 Ariz. at 238, 709 P.2d at 872.[3]

Appellant first argues that the effects of drug addiction made her unable to

---

2. In addition to showing a failure to remedy the circumstances causing out-of-home placement for more than two years, subsection (B)(6)(b) requires proof of a "substantial likelihood that the parent will not be capable of exercising proper and effective control in the near future." Because appellant had been sober for eight months prior to the severance hearing and, according to testimony, was effectively raising her youngest child, this additional element was not proved. Thus, the trial court properly rejected failure to remedy under 8–533(B)(6)(b) as a ground for termination.

3. The Arizona Supreme Court is currently reviewing the question of whether "settled purpose" or "conscious disregard" is the proper standard for abandonment under section 8–533. *In re Appeal in Pima County Severance Action No. S–114487*, 144 Ariz. Adv. Rep. 48, —— P.2d —— (App. July 27, 1993), *review granted*, CV 93–0305 PR (Dec. 15, 1993). We need not address this issue, however, as we find that appellant's conduct constituted abandonment under either standard.

form the specific intent necessary to constitute a "settled purpose to forgo all parental duties and ... claims." We disagree. Initially, we note that appellant misreads the statutory language of section 8–533(B)(1). The statute does not require a finding of an intent to forgo parental duties and claims, but rather a finding of *"intentional conduct ... that evinces* a settled purpose to forgo" them. A.R.S. § 8–533(B)(1) (emphasis added). The trial court need only find sufficient evidence of intentional conduct which, when considered objectively, "implie[s] a conscious disregard of the obligation owed by [the mother] to her child, thus supporting a finding of abandonment." *Anonymous v. Anonymous,* 25 Ariz.App. 10, 12, 540 P.2d 741, 743 (1975). Thus, to be successful, appellant's argument on this point would require us to find that her conduct, cited by the trial court in its finding of abandonment, was unintentional due to appellant's chronic drug abuse.

While this is not a criminal action, criminal law concerning the effect of voluntary intoxication on a criminal defendant's ability to form a specific intent is enlightening on this point. The recently amended version of A.R.S. section 13–503 (Supp.1993), provides that "[t]emporary intoxication resulting from voluntary ingestion of ... [drugs or alcohol] ... is not a defense for any criminal act or requisite state of mind." We view this change as a statement from the legislature that voluntary intoxication will no longer constitute a viable defense or excuse for one's acts. Clearly, if we apply this policy to section 8–533(B)(1), appellant's argument fails.

But even if we were to look to the prior version of section 13–503, appellant's argument still fails. Under A.R.S. section 13–503 (1989), voluntary intoxication could only be considered insofar as a defendant was intoxicated "at the time" he committed the act. *State v. Jeffers,* 135 Ariz. 404, 661 P.2d 1105, *cert. denied,* 464 U.S. 865, 104 S.Ct. 199, 78 L.Ed.2d 174 (1983). As the trial court noted here, appellant "used drugs off and on during the relevant time period" from the child's birth until the severance hearing. Appellant was not continuously intoxicated during that time. Therefore, many, if not most of her

actions—including her decision to move to California and her decisions to resume or continue her drug use—were voluntary and intentional. Moreover, we have held that even prolonged abuse of drugs is a voluntary condition and a defense stemming from it is "limited to establishing an inability to formulate ... specific intent...." *State v. Dante,* 25 Ariz.App. 150, 541 P.2d 941 (1975), *cert. denied, Dante v. Arizona,* 429 U.S. 853, 97 S.Ct. 146, 50 L.Ed.2d 128 (1976), *overruled in part on other grounds, State v. Hunter,* 136 Ariz. 45, 664 P.2d 195 (1983). No such inability was established here by appellant.

Appellant next contends the trial court's order of December 21, 1990, prohibiting visits with the child, should have precluded a finding of abandonment. Appellant's argument on this point is similar to one made in *Pima County Severance Action S–1607,* 147 Ariz. 237, 709 P.2d 871. In that case, the appellant father claimed that his failure to visit his son more than five or six times in a twenty-six month period was due to his restricted visitation rights. *Id.* at 239, 709 P.2d at 873. The supreme court, however, upheld the trial court's finding of abandonment, noting that not only had the father failed to fully exercise his existing visitation rights, he had dismissed an order to show cause on the modification of those rights by stipulation and "took no further legal action" to try to alter them. *Id.*

Here, appellant saw her daughter only a few times in the fourteen month period between the child's birth and the entry of the court's visitation order, and made little effort at complying with ADES's remediation program after the order was in place. Thus, the trial court correctly held that the order prohibiting visitation was properly entered and was the result of appellant's failure to comply with the requirements and conditions outlined by ADES. Had appellant desired contact with the child she could have had it simply by more faithfully attending her parenting classes and the appointments scheduled by her caseworker. Instead, appellant broke off contact with ADES and the child and moved to California. Thus, appellant's lack of contact with the child resulted from

her own intentional conduct, not the court's order.

Finally, appellant argues the testimony presented at the severance hearing did not support the trial court's finding of abandonment by clear and convincing evidence. We have recognized that "[t]erms such as 'reasonable support' and 'normal parental relationship' are of necessity imprecise" and that the concept of abandonment is somewhat elastic. *Maricopa County Juvenile Action No. JS-4283*, 133 Ariz. at 601, 653 P.2d at 58. As a consequence, determinations of abandonment and intent are ultimately questions of fact for the trial court, *id.* (citing *Anonymous*, 25 Ariz.App. at 12, 540 P.2d at 743), which we accept in support of severance unless they are clearly erroneous. *Pima County Severance Action No. S-1607*, 147 Ariz. at 238, 709 P.2d at 872.

Here, the record amply supports the trial court's finding of abandonment. From the time the child was born until she was almost three years old, appellant disappeared for months at a time and expressed little interest in and made virtually no effort to maintain her parental rights or see her daughter. This conduct is reminiscent of the appellant mother in *Anonymous* who left her child for over a year and thereafter made only minimal, token overtures of maternal affection toward the child. 25 Ariz.App. at 12, 540 P.2d at 743.

In that case, this court held that, viewed objectively, "appellant's behavior ... implied a conscious disregard of the obligation owed by her to her child, thus supporting a finding of abandonment." *Id.* Here, in addition to her prolonged absences and lack of contact with the child, appellant expressly stated at least twice that she wished to give the child up for adoption. Thus, we cannot say the trial court was clearly erroneous in holding that appellant "failed to maintain a normal parental relationship with her child without just cause" from November 1989, to May 1993, and "as a result thereof, abandoned her child."

### C. The Best Interests of the Child

Although we hold that either of the grounds found by the trial court is sufficient to support severance, a finding of one of the statutory grounds under section 8–533, standing alone, does not permit termination of parental rights. *Juvenile Action No. JS–500274*, 167 Ariz. at 4, 804 P.2d at 733. Severance must also be in the best interests of the child. *Id.* And a determination of whether termination was in the child's best interests "must include a finding as to how the child would benefit from a severance," *id.* at 5, 804 P.2d at 734, because "some benefit must be gained by the child from a termination." *Id.* at 7, 804 P.2d at 736.

Here, after she was born, the child did not see appellant again until the child was over a year old and then only on a few brief occasions. Testimony at the severance hearing established that the child does not recognize appellant as her mother. Instead, the child views the foster-adopt couple she has been with since 1991 as "Mommy" and "Daddy." While in the care of this couple, the child has bonded with them and made significant progress in overcoming the effects of her prenatal drug addiction. The record also reveals that this couple is ready to adopt the child and would provide a stable, long-term family environment for the child. Conversely, removing the child and placing her with appellant (a virtual stranger) would entail a protracted and painful transition period and a significant probability of long-term emotional trauma for the child. Thus, termination provides a clear benefit to the child by permitting her to be adopted by the couple she has regarded as her parents for over two years. *See In re Appeal in Pima County Juvenile Action No. S-2460*, 162 Ariz. 156, 781 P.2d 634 (App.1989) ("The immediate availability of an adoptive placement obviously weighs in favor of severance....").

Under these circumstances, we find no error in the trial court's finding that termination of appellant's parental rights served the best interests of the child.

### CONCLUSION

We do not take lightly our role in affirming the permanent separation of a child from her

natural parent. *See Maricopa County Juvenile Action No. JS–6520*, 157 Ariz. at 241, 756 P.2d at 338. Neither, however, do we take lightly the destructive toll inflicted on children, families, and our society by those who abuse drugs. As the U.S. Supreme Court has noted: "Possession, use, and distribution of illegal drugs represents 'one of the greatest problems affecting the health and welfare of our population.'" *Harmelin v. Michigan*, 501 U.S. 957, ———–———, 111 S.Ct. 2680, 2705–06, 115 L.Ed.2d 836 (1991) (Kennedy, J., concurring) (quoting *Treasury Employees v. Von Raab*, 489 U.S. 656, 658, 109 S.Ct. 1384, 1387, 103 L.Ed.2d 685 (1989)). Indeed, "[f]ew problems ... cause greater concern...." *Id.* (citations omitted).

■■■ Thus, although we generally are deferential to the rights of parents, *see In re Appeal in Maricopa County Juvenile Action Nos. JS–5209 and JS–4963*, 143 Ariz. 178, 189, 692 P.2d 1027, 1038 (1984), this deference can be superseded by the State's substantial interests in curbing substance abuse and protecting innocent children. *See Maricopa County Juvenile Action No. JS–6520*, 157 Ariz. at 241, 756 P.2d at 338. In this case, the trial court properly applied section 8–533 and furthered the State's substantial interest in expediting the adoption of a child whose parent failed to fulfill a statutorily-defined duty to begin remedying her substance abuse.

■■■ Parenthood involves a great deal more than impregnation, gestation, and delivery. The mere act of procreation, without some meaningful indication of a desire and ability to fulfill parental responsibilities, only initially entitles one to fully protectable parental rights. Individuals who are unwilling or unable, due to drug addiction, to accept their parental responsibilities and who thereby lose custody of their children to the State, need to be aware that they run the risk of having their parental rights permanently terminated if they substantially neglect to remedy their addiction in the year following the removal of their children.

Thus, the trial court's decision in this case was proper under the law and illustrates the value of section 8–533 in serving the best interests of children, discouraging drug use, and encouraging prompt rehabilitation.

For the foregoing reasons, the decision of the trial court is affirmed.

McGREGOR, and KLEINSCHMIDT, JJ., concur.