NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

ANDRES M., ROBERT M., *Appellants*,

*v.*

DEPARTMENT OF CHILD SAFETY, A.F., M.M., S.M., N.M., *Appellees*.

No. 1 CA-JV 16-0456
FILED 5-2-2017

---

Appeal from the Superior Court in Maricopa County
No. JD 28694
The Honorable Cari A. Harrison, Judge

**AFFIRMED**

---

COUNSEL

The Stavris Law Firm PLLC, Scottsdale
By Alison Stavris
*Counsel for Appellant, Andres M.*

John L. Popilek PC, Scottsdale
By John L. Popilek
*Counsel for Appellant, Robert M.*

Arizona Attorney General's Office, Phoenix
By Carol A. Salvati
*Counsel for Appellee, Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Margaret H. Downie delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge James P. Beene joined.

---

**D O W N I E**, Judge:

¶1        Andres M. and Robert M. appeal from orders terminating their parental rights.  For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        The children at issue in these proceedings have the same biological mother ("Mother"), who is not a party to this appeal.  In July 2014, the Department of Child Safety ("DCS") asked the superior court to find M.M., S.M., and N.M. dependent as to their father — Robert, and A.F. dependent as to his father — Andres.  The children had been taken into care after N.M. and Mother tested positive for methamphetamine at the time of N.M.'s July 2014 birth.  The court found all four children dependent.

¶3        In February 2016, DCS petitioned the court to sever the parental rights of Mother, Robert, and Andres, alleging the children had been in out-of-home placements for more than 15 months, the circumstances warranting their placements had not been remedied, and there was a substantial likelihood the parents would not be able to exercise proper and effective parental control in the near future.  *See* Ariz. Rev. Stat. ("A.R.S.") § 8-533(B)(8)(c).  A contested termination hearing ensued, after which the court terminated all three parents' rights.

¶4        Robert and Andres timely appealed.  We have jurisdiction pursuant to A.R.S. §§ 8-235(A) and 12-120.21(A)(1).

## DISCUSSION

¶5        As relevant here, a court may terminate parental rights if it finds, by clear and convincing evidence, that the children have been cared for in an out-of-home placement for 15 months or longer, and despite diligent efforts to provide reunification services, "the parent has been unable to remedy the circumstances that cause the child to be in an out-of-home placement and there is a substantial likelihood that the parent will

2

not be capable of exercising proper and effective parental care and control in the near future."[1]   A.R.S. § 8-533(B)(8)(c); *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005) (clear and convincing evidence standard).   Section 8-533(B)(8)(c)'s reference to "circumstances" means "those circumstances existing at the time of the severance that prevent a parent from being able to appropriately provide for his or her children." *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 96 n.14, ¶ 31 (App. 2009).

¶6         The superior court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts." *Id.* at 93, ¶ 18.  We view the evidence in the light most favorable to sustaining a severance order and will affirm unless there is no reasonable evidence to support it. *See Lashonda M. v. Ariz. Dep't of Econ. Sec.*, 210 Ariz. 77, 81–82, ¶ 13 (App. 2005); *In re Maricopa Cty. Juv. Action No. JV-132905*, 186 Ariz. 607, 609 (App. 1996).

## I.    Robert

¶7         Robert contends the only barrier to his parenting is Mother, who left his home in June 2016.

¶8         At the time of the termination hearing, Robert's relationship with Mother spanned 26 years and produced ten children.  N.M. was the third child to be born substance-exposed.  Robert knew his children had tested positive for methamphetamine.

¶9         One year after DCS took custody of the children, Robert underwent a psychological evaluation.   The evaluating psychologist concluded:

> [Robert] minimizes the difficulties experienced between him and [Mother] related to her methamphetamine abuse.   In order to make the changes required by DCS, he will need to develop insight and acknowledge his role as a parent and how enabling [Mother's] drug abuse has negatively influenced the children.   These issues are likely to continue

---

[1]      The court must also find by a preponderance of the evidence that termination is in the children's best interests. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005).   Because neither Robert nor Andres has challenged the superior court's best interests findings, we do not address that requirement. *See State v. Moody*, 208 Ariz. 424, 452 n.9, ¶ 101 (2004) (claims not raised in an opening brief are waived).

for an indeterminate amount of time if he continues to turn a "blind eye" to [Mother's] methamphetamine abuse and the neglect of the children.

Robert acknowledged receiving reports that "pretty consistent[ly]" noted Mother's repeated positive and missed drug tests. Nevertheless, he remained with her because he was "trying to give her the benefit of the doubt."

¶10 Mother testified at the termination hearing that she had last used methamphetamine five months earlier. When asked about positive drug tests in the three months preceding the termination hearing, including a positive test only two weeks earlier, she insisted she last used "[f]ive months ago." Robert claimed he was "at work constantly," never saw Mother use drugs, did not know where she obtained drugs, and had no idea how she paid for them given her lack of employment. He did not ask Mother about these matters, though, because he did not want it "to escalate into a quarrel" and worried Mother would be upset if he asked too many questions.

¶11 Robert testified that if his rights were not severed and the children were returned to him, he would permit them to see Mother. Asked how he would protect the children if he could not tell when Mother was using drugs, Robert responded he could "probably" gauge her "mood swings . . . depending how aggressive [she] is or acts," even though he had previously observed her "mood swings" and did not equate them with drug use.

¶12 Robert failed to take any action when his two older children were born substance-exposed and did not urge Mother to pursue treatment then. He also saw no problem with Mother caring for the children while using drugs because "she's the biological mother, I mean I didn't think nothing of it." Indeed, Robert perceived Mother's drug use as a problem only because of DCS's involvement and "the long process of . . . being without the kids." Robert agreed he had prioritized his relationship with Mother over the children's well-being while they remained in foster care and Mother continued using methamphetamine. *See In re Maricopa Cty. Juv. Action No. JS-501568*, 177 Ariz. 571, 577 (App. 1994) (The time limits in A.R.S. § 8-533(B)(8) serve as "an incentive [for parents] to begin . . . assuming their parental responsibilities as soon as possible." Belated efforts at remedying the circumstances which cause out-of-home placement may be "too little, too late" to rebut evidence justifying severance.).

¶13 Additionally, the superior court expressed skepticism about Robert's assertion that he and Mother had separated. No evidence was offered regarding Mother's new residence or how she was paying living expenses. When meeting with the DCS case manager one month after the purported separation, neither Mother nor Robert mentioned that Mother had moved out of the family home. On the contrary, the case manager testified that, at that meeting, Robert stated separation "was something they were considering."

¶14 The superior court concluded that Robert's inability to detect Mother's drug use, combined with his intent to allow her contact with the children, would place the children at risk if they were returned to his care. Reasonable evidence supports this determination. The court also expressed concern about Robert's ability to exercise proper and effective parental care and control in the near future. Mother had been the children's primary caregiver. And the case manager testified that Robert "made it quite clear [in July 2016] that six children would be too much for him." Robert admitted saying that, but testified that he would be willing to "take all of them," stating that the couple's 19-year-old daughter would watch her younger siblings. Robert lacked knowledge about N.M.'s medical needs and did not inquire about his medical visits or ask to participate. The case manager testified that despite being repeatedly told N.M. needed to remain indoors during visits due to severe asthma, Robert and Mother continued taking him outside, necessitating post-visitation trips to the emergency room. She opined that Robert did not "seem to understand the severity of [N.M.'s medical issues] and what needs to be done to keep him safe."

¶15 The superior court concluded that Robert "chose to support Mother and remain in a relationship with her over becoming independent of Mother so as to allow the children to be returned to his care." Reasonable evidence supports this finding, as well as the conclusion that Robert would be incapable of exercising proper and effective parental care and control in the near future.

## II. Andres

¶16 Andres contends DCS failed to provide him with appropriate reunification services and argues his recent sobriety demonstrates he "is amenable to rehabilitative services."

¶17 DCS alleged that Andres failed to provide A.F. with basic necessities of life, including appropriate shelter and financial support.

DCS offered Andres reunification services, including a parent aide, case aide, substance abuse treatment, and drug testing. Andres completed substance abuse treatment but continued testing positive for alcohol.

**¶18**         Andres claimed DCS did not tell him until mid-2016 that he needed to refrain from drinking alcohol. He asserted that he did not know continued drug or alcohol use would be a barrier to reunification, despite his positive tests being discussed at hearings he attended.[2] Andres did, however, acknowledge he "at least understood that the Court was concerned and did not want [him] to be drinking alcohol." Despite three DUI convictions — the most recent in December 2011 — and two aggravated assault convictions arising from accidents with injuries, Andres denied having a problem with alcohol, testifying, "I just had back luck with it." A psychological evaluation diagnosed Andres with Alcohol Use Disorder and Stimulant Use Disorder. Although DCS did not refer Andres for a second round of substance abuse treatment, Andres testified he would have told the staff he did not have a problem with alcohol. DCS is only obligated to pursue services that "offer a reasonable possibility of success" and need not offer "futile rehabilitative measures." *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 186–87, ¶ 1 (App. 1999).

**¶19**         More fundamentally, Andres admitted he could not care for A.F. even if his parental rights were not severed. At the time of the termination hearing, Andres was living with his parents and other relatives. Notwithstanding his desire to live independently, he could not do so because he owed approximately $50,000 in criminal restitution. Andres testified that due to his financial situation, "it could be anywhere from one year to three years" before he could take A.F. back. *See Maricopa Cty. Juv. Action No. JS-501568*, 177 Ariz. at 577 ("Leaving the window of opportunity for remediation open indefinitely is not necessary, nor do we think that it is in the child's or the parent's best interests.").

**¶20**         Reasonable evidence supports the determination that Andres was unable to remedy the circumstances that caused A.F.'s out-of-home placement and would remain incapable of exercising proper and effective parental care and control in the near future.

---

[2]         Additionally, in its February 2016 severance motion, DCS stated: "Despite participating in services, [Andres] continues to test positive for alcohol."

## CONCLUSION

¶21 For the foregoing reasons, we affirm the orders terminating the parental rights of Robert and Andres.



AMY M. WOOD • Clerk of the Court
FILED: AA