NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

GEORGIA B.,
*Appellant,*

v.

DEPARTMENT OF CHILD SAFETY, A.B., B.B.,
*Appellees*.

No. 1 CA-JV 19-0339
FILED 7-30-2020

Appeal from the Superior Court in Maricopa County
No.  JD531093
The Honorable David King Udall, Judge

**AFFIRMED**

COUNSEL

John L. Popilek PC, Scottsdale
By John L. Popilek
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Cathleen E. Fuller
*Counsel for Appellee Department of Child Safety*

_____

## MEMORANDUM DECISION

Presiding Judge David D. Weinzweig delivered the decision of the Court, in which Judge Jennifer M. Perkins and Judge James B. Morse Jr. joined.

_____

**W E I N Z W E I G**, Judge:

¶1        Georgia B. ("Mother") appeals the juvenile court's order terminating her parental rights to A.B. and B.B.  We affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2        Mother is the biological parent of A.B., born in July 2011, and B.B., born in May 2015.[1]  In March 2017, the Department of Child Safety learned that Mother was abusing drugs and alcohol and leaving her children unattended while she slept.  A few months later, the children's maternal grandmother took both children to the emergency room.  B.B. had "bilateral bruising" under both eyes and a "large hematoma" on his forehead.  A.B. had a cut on his forearm.

¶3        Grandmother told DCS she was concerned about Mother's heroin use and failure to supervise the children.  A.B. told investigators that Mother left hypodermic needles all around the home and injected them into her wrists "all the time."  Grandmother provided a photograph of needles in Mother's bathroom.  After unsuccessful attempts to contact Mother, DCS took temporary custody of the children and placed them in Grandmother's care.  When later reached by DCS, Mother attributed B.B.'s hematoma to a pair of falls but claimed not to know about the other bruises.  She refused to answer questions about substance abuse and refused to undergo drug testing.

¶4        DCS petitioned the superior court to find the children dependent on grounds of substance abuse and neglect.  Mother received three referrals for drug testing but did not participate.  DCS organized visitation two times.  The first visit was cancelled because Mother arrived late.  The second visit was cut short at Mother's request after she spent substantial time on her phone and ignored the case aide's instructions.

_____

[1]    A.B. and B.B. have different fathers and the superior court terminated the parental rights of both.  Neither is party to this appeal.

¶5 A day after the second visit, Mother encountered Grandmother outside Grandmother's home. She threatened to kill Grandmother and kidnap the children. She tackled Grandmother, straddled her on the ground, and repeatedly punched her face and upper body. She also shot Grandmother with a taser gun. A.B. watched the attack, "screaming the whole time" and pleading for Mother to stop. Mother eventually fled, leaving Grandmother with a broken nose, many bruises and burn marks across her arms.

¶6 Mother was arrested. She had 20 hypodermic needles and three vials of "brown" residue or liquid in her purse. She pleaded guilty to aggravated assault and was sent to prison in late 2017. DCS encouraged her to participate in substance abuse and parenting services in prison. She completed a parenting course. Grandmother secured an order of protection against Mother, which covered her and the children. A.B. feared Mother. The juvenile court suspended visitation and declared the children dependent.

¶7 Mother was released from prison in August 2018. She was placed on probation and ordered to participate in substance abuse treatment, drug testing and domestic violence counselling. DCS referred Mother for substance abuse treatment and arranged a psychological consultation. The psychologist concluded that Mother must show "full engagement, commitment, and sobriety in her substance abuse treatment and domestic violence counseling prior to family therapy visitation with her children."

¶8 Over the next two months, Mother failed three drug tests and admitted using illegal drugs five times, but she did not participate in substance abuse treatment. Mother was arrested in November 2018 for possession of heroin and methamphetamine. She returned to prison and her probation was revoked. She was released in January 2019 and her probation reinstated. DCS referred Mother for substance abuse treatment, but she did not participate. Mother again returned to prison for violating her probation terms. She completed domestic violence and anger management courses in prison and was released in July 2019.

¶9 DCS moved to terminate Mother's parental rights on the statutory grounds of substance abuse, nine-month out-of-home placement and later fifteen-month out-of-home placement.

¶10 DCS again referred Mother for substance abuse treatment and recommended her for intensive outpatient services to address her

substance abuse issues. Mother missed three drug tests in September 2019 but has otherwise not tested positive since her release. Grandmother's order of protection has been dismissed.

¶11 Mother unsuccessfully sought to continue the October 2019 severance hearing. Four witnesses testified, including Grandmother, the DCS case manager and Mother. The case manager described Mother's drug abuse problems. She explained that Mother "flat out" denied those problems and refused substance abuse treatment for years. For her part, Mother denied having any substance abuse problems. The court terminated Mother's parental rights to both children on grounds of substance abuse and fifteen-month out-of-home placement. The court also found that termination was in the children's best interest because they had a strong bond with grandparents, wanted to remain in their "safe, stable, and loving home," and were "thriving" in a drug-free environment. Mother timely appealed. We have jurisdiction pursuant A.R.S. § 8-235(A).

## DISCUSSION

¶12 Mother does not contest the juvenile court's statutory grounds for termination or that termination was in the children's best interest. She instead argues the court erroneously (1) denied her motion to continue the "prematur[e]" severance hearing, preventing her from reestablishing contact with the children; and (2) denied her an "adequate[]" opportunity to "advance her due process rights to challenge the severance motion."

¶13 A motion to continue is only granted upon showing good cause. Ariz. R.P. Juv. Ct. 46(F). We review the denial of a continuance for a clear abuse of discretion and prejudice. *See Lashonda M. v. Ariz. Dep't of Econ. Sec.*, 210 Ariz. 77, 82-83, ¶ 19 (App. 2005). An abuse of discretion occurs if the court's decision is "manifestly unreasonable," based "on untenable grounds" or "for untenable reasons." *Quigley v. Tucson City Court*, 132 Ariz. 35, 37 (1982).

¶14 We find no abuse of discretion. The court had ample evidence to deny Mother's requested continuance, including the need for permanency. *See Pima Cty Juv. Severance Action No. S-2462*, 162 Ariz. 536, 538 (App. 1989) (explaining the "child[ren's] best interests are at risk and require expedient consideration"). Mother had assaulted Grandmother as A.B. watched. She was arrested three times during the dependency, failed many drug tests and ignored referrals for substance abuse treatment. This cycle of substance abuse also prevented DCS from offering additional

reunification services.   We commend Mother's recent success, but the court did not abuse its discretion on this record.  *Maricopa Cty Juv. Action No. JS-501568*, 177 Ariz. 571, 577 (App. 1994) (explaining the "window of opportunity" cannot be left indefinitely open).

**¶15**　　　　We find no due process violation either.  *See Cruz v. Garcia*, 240 Ariz. 233, 236, ¶ 11 (App. 2016).  Mother received due process, including notice of DCS's allegations and the opportunity to defend through counsel at a full and fair severance hearing.   This was a "fundamentally fair procedure[]." *See Santosky v. Kramer*, 455 U.S. 745, 753-754 (1982).

**CONCLUSION**

**¶16**　　　　We affirm.



AMY M. WOOD • Clerk of the Court
FILED:　　AA