NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

HEATHER G., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, W.L., M.K., *Appellees*.

No. 1 CA-JV 21-0346
FILED 5-17-2022

Appeal from the Superior Court in Maricopa County
No. JD538371
The Honorable Nicolas B. Hoskins, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Maricopa County Public Advocate, Mesa
By Suzanne W. Sanchez
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Amanda Adams
*Counsel for Appellee Department of Child Safety*

**MEMORANDUM DECISION**

Presiding Judge Cynthia J. Bailey delivered the decision of the Court, in which Judge Peter B. Swann and Judge D. Steven Williams joined.

**B A I L E Y**, Judge:

¶1        Heather G. ("Mother") appeals the termination of her parental rights to W.L. and M.K. ("the children"). She argues on appeal that the Department of Child Safety ("DCS") failed to prove she substantially neglected or willfully refused to remedy the circumstances leading to out-of-home placement. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        Mother is the biological mother[1] of the children, born in 2010 and 2016. In June 2020, DCS received a report that children appeared malnourished and thin. The report also stated that parents did not have enough food and that the mother had scabs on her body. DCS then observed the children staying with their maternal aunt, confirming that one of the children was very thin, had "bags underneath her eyes" and a burn on her finger from cooking for her and her sibling. The older child, W.L., reported that she saw M.K.'s father—then living with Mother or alternatively in a motel room while "detoxing"—drink alcohol "a lot." She reported that M.K.'s father also became violent towards Mother when drinking, including throwing her on the ground and punching through glass. W.L. also reported that Mother and children had lived with other individuals who abused substances while children were present.

¶3        DCS filed a dependency petition as to Mother and each child's father. The petition alleged neglect by Mother in failing to provide for the children's basic needs and by residing with the children in a home with persons abusing substances. Further, DCS alleged Mother was illegally using marijuana and noted that W.L. had previously been adjudicated dependent as to Mother based on her substance abuse in 2014. The children remained in their maternal aunt's care throughout the dependency. Mother entered a no contest plea concerning the allegations in the petition. The court ordered DCS to provide reunification services including: substance abuse assessment and treatment through Terros, transportation as needed, random drug testing, supervised visitation, and a parent aide once Mother demonstrated thirty days of sobriety.

¶4        Mother completed an assessment with Terros in June 2020 and was diagnosed with an amphetamine-type substance abuse disorder.

---

[1] W.L.'s father's parental rights have been terminated, and the record suggests M.K.'s father retains his rights at the time of this decision. Neither father is a party to this appeal.

She admitted to using methamphetamine "a couple of times" between 2018 and 2020, most recently in February 2020. Terros advised Mother to complete a standard outpatient program, participate in random drug testing, and abstain from all drugs including alcohol. Following her assessment, Mother failed to participate in Terros outpatient services, except for attending one group session. Terros closed her out unsuccessfully in August 2020. A second and third referral to Terros were also closed out unsuccessfully in December 2020 and May 2021 after Mother failed to complete a new intake.

¶5    Mother participated in five random urinalysis tests, testing positive three times for alcohol in June and July 2020. She then stopped testing completely. Mother later testified that she had completed a substance abuse program at a sober-living home she had found. However, the only evidence Mother provided of completion of any program indicated she participated in parenting classes, not substance abuse treatment. She did not provide the purported substance abuse treatment center's name before the termination hearing and never presented documentary evidence of treatment. Mother participated in some supervised visitation, "c[oming] to visits prepared and interact[ing] well with the children," though she did miss a significant number of sessions and was placed on a "call-to-confirm" basis.

¶6    In May 2021, DCS moved to terminate Mother's parental rights to the children on substance abuse and nine-months' out-of-home placement grounds. *See* Ariz. Rev. Stat. ("A.R.S.") §§ 8-533(B)(3), (B)(8)(a).

¶7    At the termination hearing, the DCS program supervisor testified that DCS initially had concerns about Mother's substance abuse—due to markings and scabs on her skin—and the children's malnutrition. He further testified that DCS referred Mother for substance abuse treatment through Terros on multiple occasions, substance abuse testing, and visitation. He testified that DCS attempted to hold two case plan staffing meetings in early 2021 to reengage Mother and W.L.'s father, but neither attended. He testified that Mother received transportation when requested.

¶8    Mother testified that after completing the Terros intake, she went to "several of the meetings" but was unable to participate remotely as required due to Covid-19. She testified that she was not offered domestic violence counseling or transportation. While she maintained she had not willfully refused any DCS service, she admitted on cross-examination that she was not consistently testing through PSI and was closed out unsuccessfully. While she claimed to have sent an email to DCS noting she

participated in sober living, her caseworker reported no communication with her at the time.

¶9 The superior court terminated Mother's parental rights on the nine-months' time-in-care ground only. The superior court found that DCS had not established the "full scope of Mother's history of chronic substance abuse," and that while "a Ph.D-level expert witness could have provided sufficient testimony" to connect Mother's history with her lack of engagement, no DCS witness possessed the requisite expertise. But as for the nine-months' time-in-care ground, the children had been out of the home for 17 months at the time of trial. The court found that Mother steadfastly refused to drug test after July 2020, and her explanations and protests of sobriety were not credible. The court found the children were living with their maternal aunt, who was prepared to adopt them, and that termination was in their best interests.

¶10 We have jurisdiction over Mother's timely appeal pursuant to Article 6, Section 9, of the Arizona Constitution, A.R.S. §§ 8-235(A), 12-120.21(A)(1) and -2101(A)(1), and Arizona Rules of Procedure for the Juvenile Court 103 and 104.

## DISCUSSION

¶11 To terminate parental rights, a court must find clear and convincing evidence of at least one statutory ground in A.R.S. § 8-533(B) and must find by a preponderance of the evidence that termination is in the child's best interest. *See Kent K. v. Bobby M.*, 210 Ariz. 279, 288, ¶ 41 (2005); *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12 (2000). Because the superior court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts," we will affirm an order terminating parental rights if it is supported by reasonable evidence. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009) (citations omitted).

¶12 A termination based on nine-months' time-in-care requires that a court find by clear and convincing evidence that 1) the child was being cared for in an out-of-home placement for at least nine months and 2) the parent has substantially neglected or willfully refused to remedy the circumstances that caused the placement. A.R.S. § 8-533(B)(8)(a). The substantial neglect or willful refusal element focuses more on Mother's "effort to cure the circumstances" resulting in placement than her "success in actually doing so." *E.R. v. Dep't of Child Safety*, 237 Ariz. 56, 60, ¶ 17 (App. 2015) (quoting *Marina P. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 326, 329, ¶ 20

(App. 2007)). The circumstances in view are those existing at the time of termination rather than at the dependency petition. *Id.* (citation omitted).

¶13 Mother challenges the court's finding that she willfully refused or substantially neglected to remedy the circumstances that caused her children to remain in out-of-home care. She argues that while she "did not engage in the substance-abuse services that DCS offered," she successfully completed treatment on her own. Further, she notes that the superior court found that there was not sufficient evidence to establish termination because of chronic substance abuse. On these bases, she urges us to find reasonable evidence did not support the superior court's findings. We disagree.

¶14 Mother refused—from July 2020 through termination of her rights in November 2021—to participate in *any* drug testing, despite pleading no contest to the allegations of her continued illegal marijuana use, positive tests for amphetamine and methamphetamine in 2018, and prior dependency based on her use of heroin, marijuana, and morphine. Mother admitted at trial that she knew she was required to test for at least 30 days. She claimed simultaneously that she successfully tested for those 30 days and that any subsequent difficulty was the result of either not being told she needed to test or transportation issues. She further claimed sobriety from February 2020 onward.

¶15 The court found Mother's explanations were not credible, first noting that Mother only tested for two weeks, not for 30 days as she claimed. The court also found Mother had ample reason to know of her need to test: Mother had pled no contest to petition allegations including substance abuse. The court found Mother failed to participate in Terros drug treatment and that the record evidenced no effort to overcome reported difficulties with accessing services, such as by talking to DCS. The court found Mother's claim of participation in a sober living home not credible, noting that Mother provided no evidence of such participation. While the court noted Mother's participation in visitation was "mostly consistent" it distinguished between these visits and participation in services designed to ameliorate the circumstances leading to placement, i.e., substance abuse.

¶16 We do not reweigh the evidence on appeal, "even when sharply disputed facts exist," *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 151, ¶ 18 (2018) (citations and internal quotation marks omitted), and in any event the record comports with the superior court's findings of Mother's failure to participate in remediating services, *see Maricopa Cnty. Juv. Action*

*No. JS-501568*, 177 Ariz. 571, 576-77 (App. 1994) (requiring parents to show "appreciable, good faith efforts to comply with remedial programs" to avoid substantial neglect finding). Mother failed to prove participation in any alternative services aimed at remediating the substance abuse concern or alternatively, to prove her sobriety. We find no error in the superior court's finding.

¶17 Lastly, the superior court's finding that DCS had not established the substance abuse ground was not inconsistent with its substantial neglect finding. The superior court found that DCS did not establish the *chronic* nature of Mother's substance abuse; not that the abuse did not occur or that Mother had otherwise demonstrated sobriety. Indeed, the court noted that Mother's failure to test was "of grave concern" but that the DCS witness "lacked the requisite expertise" to draw the connection between Mother's earlier substance abuse and the instant dependency. This does not contradict the superior court's findings on the nine-months' time-in-care ground.

## CONCLUSION

¶18 For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:      AA