NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE
# ARIZONA COURT OF APPEALS
## DIVISION ONE

PRENTICE R.,
*Appellant*,

v.

DEPARTMENT OF CHILD SAFETY, X.R., W.R., V.R.,
*Appellees*.

No. 1 CA-JV 22-0046
FILED 8-30-2022

Appeal from the Superior Court in Maricopa County
No. JD39100
The Honorable Michael J. Herrod, Judge

**REVERSED AND REMANDED**

COUNSEL

Maricopa County Legal Defender's Office, Phoenix
By Jamie R. Heller
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Jennifer R. Blum
*Counsel for Appellee Department of Child Safety*

_____

**MEMORANDUM DECISION**

Presiding Judge David D. Weinzweig delivered the decision of the Court, in which Judge Brian Y. Furuya and Judge Jennifer M. Perkins joined.

_____

**W E I N Z W E I G**, Judge:

¶1        Prentice R. ("Father") appeals the termination of his parental rights to his three children.  We reverse and remand for the reasons that follow.

## FACTS AND PROCEDURAL BACKGROUND

¶2        Mother and Father share three children born between September 2012 and September 2015.  The Department of Child Safety ("DCS") first learned about the family in 2016 after both parents were arrested for possession of dangerous drugs for sale and a weapons violation.  The children were removed and found dependent based on neglect from criminal activity and substance abuse.

¶3        Father pled guilty to two felonies (attempt to commit possession of narcotic drugs for sale and misconduct involving weapons) and received a five-year prison sentence, beginning in April 2017.  Mother received no jail time.  Father stayed in touch with the children during his prison sentence, and he successfully completed several programs on parenting topics and communication skills.

¶4        The dependency was dismissed in 2019, and the juvenile court returned the children to Mother.  Just months later, DCS removed the children for a second time.  In February 2020, DCS learned that Mother had been found unconscious behind the wheel of her car, which was parked at her children's school.  The youngest two children were seated in the car, but the oldest was found in the parking lot.  DCS learned that Mother often smelled of marijuana and the children were often "one to three hours late" to school.  DCS petitioned the juvenile court to find the children dependent as to Mother based on substance abuse, mental health and neglect.

¶5        In February 2020, DCS petitioned the juvenile court to find the children dependent as to Father based on incarceration and neglect due to substance abuse (specifically, marijuana abuse).  DCS later stipulated to

dismiss the substance abuse allegations, and the court found the children dependent as to Father on incarceration alone.

¶6　　　　About three months later, in September 2020, Father was released from prison and placed on probation. That same month, Father secured his medical marijuana card. DCS referred Father for random drug testing and substance abuse treatment. Under his case plan, DCS directed Father to "acknowledge the importance of remaining sober in order to safely parent [his] children [and to] understand the importance of being sober and how using substances affect[] [his] daily functioning and ability to parent."

¶7　　　　The record has conflicting evidence on whether Father completed an intake for a substance abuse assessment, but Father refused to attend the treatment itself because he only "deals drugs" and "doesn't do drugs." Father also missed nearly all his random drug tests from October 2020 to October 2021.

¶8　　　　DCS arranged for Father to have four hours of supervised visitation per week. The visits went well. In September 2020, a DCS supervisor reported that Father had been "present and on time to visitation," and recognized "[t]he children are forming a close bond with [Father] and are excited to see him." By December 2020, Father had missed some visits for lack of transportation. DCS reported the "[v]isits mostly go well when [Father] attends." DCS expressed concern, however, about Father's "struggles with managing [the children's] behaviors," explaining he once gave the children "sodas and no food after they stated they were hungry."

¶9　　　　The supervised visits stopped in January 2021 because Father was hospitalized with COVID-19. Soon after, in early April 2021, DCS petitioned the juvenile court to terminate Father's parental rights based on abandonment and nine months' out-of-home placement. *See* A.R.S. § 8-533(B)(1), (B)(8)(a).

¶10　　　　Father resumed the supervised visits in May 2021, and a DCS supervisor described Father as "definitely consistent with visiting his children." The children enjoyed visits and became upset if one was canceled. Father played games with the children and spoke with them about school, good behavior and manners. According to the DCS supervisor, Father had "recently" improved "at engaging with [his] kids." Father also made better food choices for the children over time.

¶11        As before, however, DCS raised various concerns about Father's behavior at supervised visits. First, Father often relied on movies to entertain the children, would yell at the children for minor things, and threatened to leave the visits early, blaming the children. Second, a parent aide once "felt threatened" by Father because he yelled at her, so she ended the visit early and Father stormed out "without saying good-bye to [the children]." Third, Father fell asleep at some visits and the parent aides would rouse him. Father blamed "a sleeping disorder and narcolepsy," but DCS was skeptical because Father did not produce a doctor's note. The record had evidence of Father's "severe" sleep apnea, however, which is mentioned in his probation records and a 2014 doctor's note.

¶12        Father secured housing in May 2021, and his probation records show he also maintained employment. A DCS supervisor testified that he was compliant with his probation and acknowledged he kept a steady job and housing. And beginning in October 2021, Father consistently participated in random drug tests and almost always tested positive for THC. He once tested positive for opiates.

¶13        A severance hearing was held in February 2022. The DCS supervisor testified that Father would not be able to parent the children in the near future because "there's been a long period of time where [Father] hasn't been fully engaged in his children's lives. Part of that was his five-year incarceration." She added that Father might have fallen asleep at some visits because of his marijuana use. Father also testified, emphasizing he had housing, he was employed, he was consistently participating in random urine tests since October 2021, and he participated in supervised visits with the children.

¶14        The juvenile court terminated Father's parenting rights, reasoning that Father had not attempted to remedy the circumstances causing the children's out-of-home placement for nine months:

> Simply put, other than attending supervised visits for a period of time, and working, Father has not done any of the things necessary to remedy the circumstances that brought the children into care. He has not shown stability. He has not shown sobriety. He has not addressed any substance abuse issues, nor answered the question whether he has a substance abuse issue. Most importantly, Father has not addressed and learned parenting skills so that he can parent these children.

¶15     Father appealed.   We have jurisdiction.   *See* A.R.S. §§ 12-2101(A)(1), -120.21(A)(1), 8-235.

## DISCUSSION

¶16     To terminate parental rights, the court must find one statutory ground for termination under A.R.S. § 8-533(B) by clear and convincing evidence, and that termination is in the child's best interests by a preponderance of the evidence. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 149-50, ¶ 8 (2018).   We affirm a termination order unless it is clearly erroneous, and accept the court's findings of fact unless unsupported by reasonable evidence. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002).

¶17     The juvenile court found by clear and convincing evidence that DCS proved the statutory ground of nine months' out-of-home placement. *See* A.R.S. § 8-533(B).   On that ground, DCS must prove the children were in an out-of-home placement for at least nine months, and "the parent has substantially neglected or wilfully refused to remedy the circumstances that cause the child to be in an out-of-home placement." A.R.S. § 8-533(B)(8)(a).   This ground "focuses on the level of the parent's effort to cure the circumstances," and not "the parent's success in actually doing so." *Marina P. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 326, 329, ¶ 20 (App. 2007).   Thus, termination is inappropriate on this ground when a parent tries to remedy the circumstances but fails. *Id*. at ¶ 21.   To defeat a petition for termination under Section 8-533(B)(8), the parent must make "at a minimum, something more than trivial or de minim[i]s efforts at remediation." *See Matter of Appeal in Maricopa Cnty. Juv. Action No. JS-501568*, 177 Ariz. 571, 576, n.1 (App. 1994).

¶18     We reverse.   On this record, Father made more than trivial or de minimis efforts toward reunification. *See id*.   By the time of the severance hearing, Father had been hired for steady work, found stable housing, was compliant with probation and participated in supervised visitation and drug testing.   Although Father has more work to do, his undisputed efforts on this record are more than trivial.

**CONCLUSION**

¶19    We reverse and remand.

