NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

# IN THE
# ARIZONA COURT OF APPEALS
## DIVISION ONE

JOSHUA H., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, M.H., J.H., J.H., *Appellees*.

No. 1 CA-JV 17-0357
FILED 12-19-2017

Appeal from the Superior Court in Maricopa County
No. JD32667
The Honorable Cari A. Harrison, Judge

**AFFIRMED**

COUNSEL

Czop Law Firm PLLC, Higley
By Steven Czop
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Sandra L. Nahigian
*Counsel for Appellee Department of Child Safety*

---

## MEMORANDUM DECISION

Presiding Judge Paul J. McMurdie delivered the decision of the Court, in which Judge Peter B. Swann and Judge James B. Morse Jr. joined.

---

**M c M U R D I E**, Judge:

**¶1** Joshua H. ("Father") appeals the superior court's termination of his parental rights. For the following reasons, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

**¶2** Father and Rene P. ("Mother") are the biological parents of M.H., J.H., and J.H. ("the Children").[1] After the youngest child tested positive for opiates shortly after birth, and Father and Mother failed to comply with the in-home services offered by the Department of Child Safety ("DCS"), DCS took the Children into temporary physical custody. DCS then initiated dependency proceedings regarding both parents. DCS alleged each child was dependent concerning Father due to abuse and neglect based on his substance abuse, failure to protect the Children from Mother's substance abuse, and failure to provide the Children with a safe and stable living environment. The superior court adjudicated the Children dependent in July 2016.

**¶3** After the dependency hearing, the case plan was set for reunification. DCS initially referred Father for a TERROS substance abuse assessment and, after Father completed an intake, DCS did not recommend substance abuse treatment. DCS also referred Father for TASC substance abuse testing on three different occassions, but Father did not participate and was dismissed from the TASC program in July 2016 because he failed to provide urinalysis samples. DCS again referred Father to TASC in September 2016, and Father then provided two negative urinalysis samples. In October 2016, the superior court ordered the transition for the Children to return home, beginning with partially unsupervised visits with Father.

---

[1] In July 2017, the superior court terminated Mother's parental rights. Mother did not appeal that ruling and is not a party to this appeal.

DCS was preparing to transition the Children back home with Father by December 9, 2016.

¶4        On December 1, 2016, an urgent care facility in Florence called the police to respond to an incident involving Mother. Mother left the urgent care facility with Father before the police arrived, but the police pulled Father over. Father initially told the superior court that he randomly ran into Mother at the urgent care facility, but testified at the severance trial that he was giving Mother a ride to an in-patient drug facility in Mesa and stopped at the urgent care facility because he needed medical attention. The police found prescription Xanax underneath Mother's seat in the car, and Mother admitted to police that she and Father were "script shopping." Father was driving on an expired license, but police did not arrest him because he needed medical attention. After the incident, DCS recommended the Children remain in their out-of-home placements, and the court subsequently affirmed the out-of-home placement orders. The court also ordered Father to participate in parent-aide services and random urinalysis testing, and to self-refer to domestic violence counseling.

¶5        Later in December 2016, Father left Arizona and travelled to California for three to four weeks to address legal matters pending there. Father informed DCS he was leaving the state, and contacted DCS again after returning in January 2017. From December 2016 to March 2017, Father missed several visits with the Children and failed to provide urinalysis samples or participate in parent-aide services or domestic violence counseling. In March 2017, DCS petitioned to terminate Father's parental rights to the Children based on a cumulative total period of nine months in out-of-home placement and Father's substantial neglect or willful refusal to remedy the circumstances that caused the Children to be in an out-of-home placement. *See* Ariz. Rev. Stat. ("A.R.S.") § 8-533(B)(8)(a).

¶6        A severance trial was held in July 2017. At the time of the trial, Father had provided at least 15 negative urinalysis samples, but missed three tests in May and June 2017. He also began, but had not completed, domestic violence counseling and substance abuse classes. Father additionally had one parent-aide referral closed out unsuccessfully, and was waiting for a new parent aide to be assigned. After the hearing, the superior court issued an order terminating Father's parental rights to the Children. The court found that the Children had been in out-of-home placement for longer than nine months, DCS made diligent efforts to reunify the family, and Father substantially neglected or willfully refused to remedy the circumstances that caused the Children to be in an out-of-

home placement. The court also found that severance was in the Children's best interests.[2]

¶7        Father timely appealed, and we have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 8-235(A), 12-120.21(A)(1), and -2101(A)(1).

## DISCUSSION

¶8        A parent-child relationship may be terminated when a court finds, by clear and convincing evidence, at least one statutory ground for severance and determines severance is in the child's best interests. A.R.S. § 8-533(B); *Mary Lou C. v. ADES*, 207 Ariz. 43, 47, ¶ 8 (App. 2004). We review a court's severance determination for an abuse of discretion and adopt its findings of fact unless clearly erroneous. *Id.*

¶9        Under A.R.S. § 8-533(B)(8)(a), a parent's rights may be terminated when a child has been placed out of home "for a cumulative total period of nine months or longer . . . and the parent has substantially neglected or willfully refused to remedy the circumstances that cause[d] the child to be in an out-of-home placement." Father argues the superior court erred by finding he substantially neglected or willfully refused to remedy the circumstances that caused the Children to be in out-of-home placement.

¶10       Father acknowledges he did not participate in services for a few months between the start of DCS's involvement and the severance trial. However, he argues that beginning in March 2017, he did not miss a visit with the Children and that his participation in services "increased significantly." He references several negative drug tests, his participation in substance abuse awareness and maintenance class, and his participation in domestic violence counseling. He therefore contends he should have been "allowed fifteen months in this case to see if he could make the behavioral changes necessary to be able to parent in the foreseeable future." *See Marina P. v. ADES*, 214 Ariz. 326, 330, ¶ 21 (App. 2007) ("If the moving party cannot establish that the parent 'substantially neglected or willfully refused' to cure the circumstances, even if it establishes that the circumstances were not cured at the time of severance, it cannot obtain severance until the child has been in an out-of-home placement for at least fifteen months.").

---

[2]       Father does not challenge the superior court's best interests finding on appeal. Therefore, we do not address that finding.

¶11        The superior court ordered Father to participate in several services over the course of the proceedings. In June, July, and December 2016, the court ordered parent-aide services, and Father was to complete a parent-aide intake in November 2016. Father testified he was in contact with parent-aide services, but was unable to schedule any appointments due to conflicting schedules. The parent-aide referral was closed out in March 2017 due to sporadic contact and Father's failure to follow through. A new parent-aide referral was submitted in June 2017, and Father was waiting for a new a parent aide to be assigned at the time of trial.

¶12        In December 2016, the court ordered Father to self-refer to domestic violence counseling. Father testified he "searched for months" and called "between 20 and 30 places" to find a domestic violence counseling program, but was repeatedly turned down because he did not have an open domestic violence case with a court order for counseling. At the start of DCS's involvement, in May 2016, DCS provided Mother and Father with information about domestic violence programs. Father testified he did not retain those resources because he had not been ordered to participate in domestic violence counseling and that DCS later provided him with the name of one domestic violence counseling program, but that program was no longer available. Father did not contact DCS again regarding his inability to enroll in domestic violence counseling until late April or early May 2017. He eventually began domestic violence counseling, and at the time of the severance hearing Father had completed two months of an approximately six-month program.[3] As the superior court noted, parents must "voice their concerns about services to the juvenile court in a timely manner." *Shawanee S. v. ADES*, 234 Ariz. 174, 178, ¶ 16 (App. 2014). Although Father is not contesting the adequacy of services on appeal, Father could have informed the court about his trouble enrolling in domestic violence counseling at hearings in March or April 2017.

¶13        This court considers circumstances at the time of the severance trial in determining whether the circumstances that led to the child's removal have been cured. *Marina P.*, 214 Ariz. at 330, ¶ 22. A parent "who make[s] appreciable, good faith efforts to comply with remedial

---

[3]        Father also references his completion of a "Parents for Parents HOPE" class in May 2017 and his participation in a substance abuse awareness and maintenance class to support his argument. Father did complete the parenting class in May 2017. At the time of the severance trial, Father had only completed "three, maybe four weeks" out of the 12-week substance abuse program.

programs . . . will not be found to have substantially neglected to remedy the circumstances that caused out-of-home placement." *Maricopa County Juv. Action No. JS-501568*, 177 Ariz. 571, 576 (App. 1994). However, if a parent "makes only sporadic, aborted attempts to remedy" the circumstances, the superior court may terminate the parent's rights. *Id.*

¶14 In its order terminating Father's parental rights, the superior court listed the numerous services Father was referred to, including: "urinalysis testing, hair follicle testing, substance abuse assessment, substance abuse treatment, parent aide, supervised visitation, family reunification team and self-referral for individual counseling and self-referral for domestic violence counseling." The court then analyzed Father's participation in each service, noting: (1) Father failed to complete a hair follicle test; (2) Father did not take a urinalysis test until September 2016, and missed tests in May and June 2017; (3) the family reunification team was cancelled after the December 2016 incident; (4) the parent-aide referral was closed out unsuccessfully for Father's failure to follow through; (5) Father left Arizona and did not participate in services for over a month; and (6) "[o]nce he returned, he did not seek domestic violence counseling or notify [DCS] or the Court . . . that he was having any difficulty in obtaining [the counseling] as he now claims."

¶15 Most importantly, the superior court expressed concern about Father's continued relationship with Mother. The court informed Father multiple times he needed to separate himself from Mother, which Father acknowledged, but at the severance trial the court told Father it had "trouble with the fact that [he] could never disentangle [himself] from Mother." Father first testified he was not in a relationship with Mother and had not seen her since December 2016. However, in April 2017 Mother listed Father's address as her own, Mother reported to DCS and the Children's placement "that she and Father are together and intend to reconcile as soon as he gets the children home," and Father later testified he saw Mother the weekend before the severance trial because Mother gave birth to their fourth child.[4] On the second day of the severance trial, the superior court learned that Mother and the newborn baby were missing, and Father claimed to not know their whereabouts. In its order terminating Father's parental rights, the court stated it did not "find it credible that

---

[4] The superior court adjudicated the newborn baby, E.H., dependent on October 26, 2017.

Father has ended contact with Mother or that he now believes she is a danger to the children."

¶16 The superior court stated it did not "find much of Father's testimony credible. He admitted that he intentionally lied to the Court and [DCS] regarding issues that were addressed at previous Court hearings. Additionally, Father changed his testimony from day one to day two of the severance trial." The superior court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and make appropriate findings." *Jesus M. v. ADES*, 203 Ariz. 278, 280, ¶ 4 (App. 2002). This court does not reweigh the evidence on appeal and only looks to "determine if there is evidence to sustain the court's ruling." *Mary Lou C.*, 207 Ariz. at 48, ¶ 8.

¶17 The circumstances that led to the Children being placed in out-of-home care included Father's substance abuse, failure to protect the Children from Mother's substance abuse, and failure to provide a safe and stable living environment. We recognize the efforts Father has made by participating in services. However, at the time of the hearing, the evidence demonstrated that Father had completed just one-third of the domestic abuse counseling and substance abuse class he enrolled in. While he testified to reasons for not enrolling in programs immediately after being ordered to participate in services, the superior court questioned Father's credibility as a witness. Questions also arose concerning Father's living situation. As the superior court stated, "[a]t the time of trial, Father was living in Phoenix with his sister but claimed to still be residing at his residence in Pinal County on weekends. He was unable to explain why a recent letter sent by [DCS] to his address in Pinal County was returned as undeliverable." Further, as discussed above, the superior court repeatedly expressed concern about Father's continued relationship with Mother, who failed to consistently participate in services offered to her, was taken into custody twice during the pendency of this case, and gave birth to a baby who tested positive for methadone and opiates only days before the severance hearing. Accordingly, we find the superior court did not abuse its discretion by finding Father substantially neglected or willfully refused to remedy the circumstances that caused the Children to be in an out-of-home placement.

**CONCLUSION**

¶18    For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:  AA