NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

### DIVISION ONE

---

FERNANDO G., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, L.G., *Appellees*.

No. 1 CA-JV 19-0382
FILED 6-16-2020

---

Appeal from the Superior Court in Maricopa County
No. JD 34958
The Honorable Sara J. Agne, Judge

**AFFIRMED**

---

COUNSEL

David W. Bell, Attorney at Law, Higley
By David W. Bell
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By JoAnn Falgout
*Counsel for Appellee, Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Jennifer B. Campbell delivered the decision of the Court, in which Presiding Judge Paul J. McMurdie and Judge Kent E. Cattani joined.

---

**C A M P B E L L**, Judge:

¶1        Fernando G. ("Father") appeals the superior court's order terminating his parental rights. He argues the evidence was insufficient to support the superior court's findings that (1) the Department of Child Safety ("DCS") made diligent efforts to provide appropriate reunification services, and (2) that termination is in the child's best interests. Because sufficient evidence supports the superior court's findings, we affirm.

**BACKGROUND**

¶2        Father and Veronica G. ("Mother") have one child in common, Lydia, who was born in January 2014.[1] Mother has another daughter, Paula, who is not related to Father and not subject to this appeal. Paula and Lydia live together with paternal grandmother.

¶3        In October 2017, DCS received a report that Mother was using illegal substances, including methamphetamine and marijuana. A urinalysis confirmed her use of methamphetamine and amphetamine. Father was in custody for a weapons misconduct charge at the time the child was born, and Father was in prison throughout most of the dependency proceedings.

¶4        DCS took the child into care at the end of October 2017 and filed a dependency petition alleging that Father was unwilling or unable to provide proper and effective parental care for the child due to incarceration and abandonment. The child was found dependent regarding Father in November of 2017.

¶5        DCS asked Father to participate in any services available in prison. While in prison, he participated in anger management and an array of skills classes, including social, feelings, life, and core skills and Narcotics

---

[1]        Mother is not a party to this appeal.

Anonymous. Father also obtained his GED while in prison, but did not participate in any parenting or child development classes.

¶6		Father was released from custody in April 2019. He saw his child that day, but then waited weeks before seeing her again. There was a delay between his release and the start of services because DCS had trouble contacting him. DCS eventually was forced to enlist paternal grandmother to help arrange contact with Father.

¶7		DCS arranged for parent aide services, including supervised visitation, but Father's participation was inconsistent. Father failed to visit his child for up to two weeks at a time. Similarly, Father made only occasional attempts to communicate with his child outside of attending visitation.  The case manager testified that, in addition to parent aide services, Father needed to complete additional parenting classes. However, Father continued to demonstrate a reluctance to participate throughout the provision of services.

¶8		Father participated in a psychological examination with Dr. Velez, who determined he has an antisocial personality disorder. Dr. Velez had "concerns . . . regarding [Father's] . . . capabilities to maintain and sustain . . . long term emotional and behavioral stability," and that he did "not have the coping skills and the stability . . . to manage his behavioral state and his parenting role." Dr. Velez opined that Father would benefit from more parenting classes and parent aide services to bolster his parenting skills. She also recommended cognitive behavioral therapy ("CBT"). As of the date of the severance hearing, Father had not called the CBT provider nor had he looked into the additional parenting classes.

¶9		DCS filed a motion for termination of Father's parental rights in December 2018  based on incarceration. After his release from prison, DCS amended the basis for termination, instead asserting the statutory ground of fifteen months' time in care. After holding a one-day contested severance hearing, the superior court found that (1) DCS had proven the statutory ground for termination, (2) DCS had made diligent efforts to provide Father with reunification services, (3) Father was unable to remedy the circumstances that caused the child to be taken into care, and (4) termination was in the child's best interests. Father timely appealed.

### DISCUSSION

¶10		"Parents possess a fundamental liberty interest in the care, custody, and management of their children." *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 24 (2005). But even fundamental rights are not absolute. *Id.* A

court may sever those rights if it finds clear and convincing evidence of one of the statutory grounds for severance and finds by a preponderance of the evidence that severance is in the children's best interests. *See* A.R.S. §§ 8–533(B), –537(B); *Aleise H. v. Dep't of Child Safety*, 245 Ariz. 569, 572, ¶ 7 (App. 2018). The superior court is entrusted with a great deal of discretion in weighing and balancing the interests of the children, parents, and State. *Cochise Cty. Juv. Action No. 5666–J*, 133 Ariz. 157, 160 (1982).

**¶11** We will not disturb the court's termination of parental rights unless the factual findings are clearly erroneous—that is, unless no reasonable evidence exists to support them. *See Minh T. v. Ariz. Dep't of Econ. Sec.*, 202 Ariz. 76, 78–79, ¶ 9 (App. 2001). We interpret the evidence and reasonable inferences in the light most favorable to affirming the court's order. *Manuel M. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 205, 207, ¶ 2 (App. 2008).

## I.     Diligent Efforts to Provide Reunification Services

**¶12** Father argues DCS failed to make diligent efforts to provide appropriate reunification services. Specifically, Father contends that DCS did not allow him enough time to complete the required services after he got out of prison, and DCS took too long to make appropriate service arrangements. We disagree.

**¶13** DCS satisfies its obligation to make diligent efforts to reunify by providing a parent "with the time and opportunity to participate in programs designed to help [the parent] become an effective parent." *Maricopa Cty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994). To meet its obligation, DCS need not provide every conceivable service or force Father to participate in the services offered. *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 187, ¶ 1 (App. 1999). Stated differently, "[t]he State is not obliged to undertake futile rehabilitative measures . . . [only] those which offer a reasonable possibility of success." *Id.* at 192, ¶ 37. Parents have an affirmative duty to engage in services in a timely, consistent manner, and DCS does not need to leave "the window of opportunity for remediation open indefinitely." *Maricopa Cty. Juv. Action No. JS-501568*, 177 Ariz. 571, 577 (App. 1994).

**¶14** While in prison, DCS asked Father to participate in available services. Although Father took advantage of some self-improvement services, he did not participate in any classes geared toward parenting or child development. DCS tried to contact Father multiple times to coordinate additional services once he was released, but could not reach him. Once

4

DCS was able to connect with Father, his participation in the services offered was inconsistent.

¶15 Though Father argues DCS should have given him more time; Father failed to maximize the window of opportunity for remediation by failing to contact DCS, to self-refer for CBT, or to engage in available services consistently. *See JS-501568*, 177 Ariz. at 577. Therefore, reasonable evidence supports the superior court's diligent efforts finding.

## II. Best Interests

¶16 Father argues the evidence was insufficient to support a finding that the child would benefit from termination. Father asserts the child's best interests would be better served by allowing him additional time to implement recommended services.

¶17 Termination of parental rights is in the children's best interests if the termination would benefit the child or if the continuation of the relationship would harm the child. *Aleise H.*, 245 Ariz. at 572, ¶ 9 . Once the court's focus shifts to the best interests analysis, the "foremost concern . . . is protecting a child's interest in stability and security." *Id.* (citations omitted). The superior court also considers whether the current placement is meeting the children's needs and whether an adoptive placement is available. *Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 377, ¶ 5 (App. 1998). Generally, a finite window of opportunity for remediation is in the best interests of the child. *JS-501568*, 177 Ariz. at 577.

¶18 Sufficient evidence shows that severance would be in the child's best interests. At the time of the severance hearing, the child had been in care for approximately two years and was placed with her paternal grandmother. The case manager testified that the child likes living with her grandmother, and calls her "Mom." The child lives with her half-sister, who is also placed with Lydia's paternal grandmother. Grandmother is planning to adopt both children, and she has indicated a willingness to permit Father to have contact and attempt to develop a relationship with the child, even after severance of his rights. Finally, even if grandmother is unable to adopt the child, the case manager testified the child is otherwise adoptable.

¶19 Furthermore, sufficient evidence supports a finding that failure to sever Father's rights would harm the child. The superior court found that severance of Father's parental rights was in the child's best interests because "[t]he great weight of the trial testimony was in agreement that [Father] had much work to do on himself before there would be any likelihood that he would be a minimally adequate parent." The child had

been in care for approximately two years, and the DCS case manager testified that it would be detrimental for her to continue to linger in care, if DCS were to give Father more time to complete services.

¶20    Regarding Father's argument that the superior court failed to consider relevant facts, as the trier of fact, the superior court is entitled to determine the appropriate weight to give each fact. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009) (The superior court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts.") (citation omitted).

¶21    The superior court found that termination would be in the child's best interests by a preponderance of the evidence. This finding was within the court's discretion and is supported by credible evidence.

**CONCLUSION**

¶22    For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AA