NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

ANTHONY A., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, T.M., L.A., *Appellees*.

No. 1 CA-JV 20-0055
FILED 7-30-2020

Appeal from the Superior Court in Maricopa County
No. JD28256
The Honorable Bernard C. Owens, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

David W. Bell Attorney at Law, Higley
By David W. Bell
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Autumn Spritzer
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge James B. Morse Jr. and Judge Paul J. McMurdie joined.

---

**C R U Z**, Judge:

¶1        Anthony A. ("Father") appeals the superior court's order terminating his parental rights to minor children, T.M. and L.A.  For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2        T.M. and L.A. were born to Father and Tonya M. ("Mother"). T.M was born in 2007; L.A. in 2009.  Mother also has children from a previous relationship.[1]   The family has an extensive history with the Department of Child Safety ("DCS"), including more than ten reports of child neglect dating back to 2002.  The reports include the children being left at home without proper and safe supervision, irregular attendance at school, and poor hygiene, among other issues.

¶3        In March 2014, DCS received a report that no one was home supervising the children.  The report also stated the home smelled of urine and feces, and that Mother's other children were not attending school. Based on Father's absence, resulting in a failure to provide proper and effective parental care, DCS filed a dependency petition as to T.M. and L.A. The petition also alleged Father was absent for the past six months. Although Father claims that he lived in the family home, no other evidence suggests he did.  After proper service, Father did not appear at the 2014 dependency hearing, and the court found T.M. and L.A. dependent as to Father.  The children were eventually removed from Mother's care in March 2015.

¶4        Father did not contact DCS until almost three years later in January 2018.  DCS offered Father services, including supervised visits, parent aide services, a psychological consultation, counseling, and substance-abuse treatment and testing for his admitted marijuana use.

---

[1]       Mother is not a party to this appeal.

**¶5**        Father failed to participate in two referrals for substance-abuse treatment.  Father also did not attend the required drug screenings.  Although Father participated in the parent aide services, there were concerns regarding Father's protective capacities due to his mental health, resulting in an unsuccessful completion of the service.  Father also failed to participate fully in supervised visits and counseling.

**¶6**        In February 2019, Father was charged in New Mexico with conspiracy to transport illegal aliens.  Father pleaded guilty and was incarcerated.

**¶7**        DCS filed a motion to terminate Father's parental rights based on his abandonment of T.M. and L.A. for the approximate three years between the children's removal and his first contact with DCS, and for the months in between his February 2019 incarceration and the December 2019 termination hearing.  DCS also sought to terminate Father's parental rights under the fifteen months' out-of-home placement ground.

**¶8**        The superior court terminated on both grounds as alleged.  Father timely appealed, and we have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 8-235(A) and 12-120.21(A)(1).

## DISCUSSION

**¶9**        "Parents possess a fundamental liberty interest in the care, custody, and management of their children," but "parental rights are not absolute." *Kent. K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 24 (2005).  To terminate parental rights, the superior court must find by clear and convincing evidence one of the statutory grounds outlined in A.R.S. § 8-533(B), and by a preponderance of the evidence that termination is in the child's best interests. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 149-50, ¶ 8 (2018).

**¶10**        Father challenges both the superior court's findings that a statutory ground existed and that termination was in T.M.'s and L.A.'s best interests.  "Because the juvenile court is in the best position to weigh evidence and assess witness credibility, we accept the juvenile court's findings of fact if reasonable evidence and inferences support them, and will affirm a severance order unless it is clearly erroneous." *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 3, ¶ 9 (2016).  Accordingly, "[w]e view the facts in a light most favorable to affirming the trial court's findings." *Maricopa Cty. Juv. Action No. JS-8490*, 179 Ariz. 102, 106 (1994).

I.      Statutory Ground for Termination

**¶11**      Pursuant to A.R.S. § 8-533(B)(1), the superior court may terminate a parent-child relationship when "the parent has abandoned the child."  The term "abandonment" is defined as follows:

> [T]he failure of a parent to provide reasonable support and to maintain regular contact with the child, including providing normal supervision.  Abandonment includes a judicial finding that a parent has made only minimal efforts to support and communicate with the child.  Failure to maintain a normal parental relationship with the child without just cause for a period of six months constitutes prima facie evidence of abandonment.

A.R.S. § 8-531(1).

**¶12**      Father first argues the court erred in finding he abandoned T.M. and L.A. between 2015 and 2018.  He points to his self-serving testimony that he had regular contact with them during that time.  At the termination hearing, Father testified he had "little" contact with T.M. and L.A.  He further testified his children called him two to three times a month, and that he did not attempt to see them during this period.  However, the DCS specialist testified Father did not have any contact, telephonic or otherwise, with the children during that time.  We decline the invitation to re-weigh the evidence and re-assess the credibility of the witnesses.  *See Demetrius L.*, 239 Ariz. at 3, ¶ 9.  Nevertheless, Father's alleged telephonic contact with T.M. and L.A. does not constitute reasonable support and regular contact.  Even under Father's version of events, Father made no effort to contact T.M. and L.A.; they contacted him.  *See Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 250, ¶ 22 (2000) (noting parents who face termination on abandonment ground should "do something, because conduct speaks louder than words or subjective intent") (citation omitted).

**¶13**      Even if Father abandoned T.M. and L.A., Father asserts that he "cured" the abandonment by having regular visitation after he contacted DCS in 2018.  "[A] prima facie case of abandonment cannot automatically be considered rebutted merely by post-petition attempts to re-establish a parental relationship. Such an automatic rule would virtually eliminate any possibility of success for a petition in a contested termination action." *Maricopa Cty. Juv. Action No. JS-500274*, 167 Ariz. 1, 8 (1990).

¶14        In this case, the superior court considered and rejected Father's attempts to re-establish his parental relationship to T.M. and L.A, noting the following:

> It is clear [Father] has also chosen not to be involved with parenting the children on a day-in, day-out basis. He has never done so, occasionally visiting them at best and often going long stretches of time without being in contact with his children or being involved in their care.

Father's mere attempts to re-establish a parental relationship are not dispositive. The court did not err in finding that Father abandoned T.M. and L.A.

¶15        Father also argues that the court erred in finding DCS made diligent and reasonable efforts to reunify him with T.M. and L.A. As previously mentioned, Father never had a normal parent-child relationship with his children. Therefore, Father was not entitled to reunification services when DCS sought termination of his parental rights based on abandonment. *See Toni W. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 61, 66, ¶ 15 (App. 1999) (in abandonment cases, diligent efforts to provide reunification services are not required in absence of an existing parent-child relationship); *see also Bobby G. v. Ariz. Dep't of Econ. Sec.*, 219 Ariz. 506, 510, ¶ 11 (App. 2008) (no requirement for reunification services in abandonment cases). Nevertheless, DCS provided services to Father, and he had more than three years to engage in such services. Although services were not provided when Father was incarcerated, leaving open the window for remediation indefinitely is not necessary. *Maricopa Cty. Juv. Action No. JS-501568*, 177 Ariz. 571, 577 (App. 1994). Additionally, even if the parent is incarcerated, the burden is on the parent to do something: "[H]e must act persistently to establish the relationship however possible and must vigorously assert his legal rights to the extent necessary." *Michael J.*, 196 Ariz. at 250, ¶ 22 (citation omitted).

¶16        Because sufficient evidence supports the superior court's finding concerning A.R.S. § 8-533(B)(1), we need not address the fifteen months' out-of-home placement ground. *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 3 (App. 2002).

II.      Best-Interests Determination

¶17        The superior court must also find the termination of the parent-child relationship is in the child's best interests. A.R.S. § 8-533(B). "The 'child's interest in stability and security' must be the court's primary

concern." *Alma S.*, 245 Ariz. at 150, ¶ 12 (quoting *Demetrius L.*, 239 Ariz. at 4, ¶ 15). "[T]ermination is in the child's best interests if either: (1) the child will benefit from severance; or (2) the child will be harmed if severance is denied." *Id.* at ¶ 13. Benefits include a child's prospective adoption and stability in a current placement. *Dominique M. v. Dep't of Child Safety*, 240 Ariz. 96, 98, ¶ 8 (App. 2016). In this case, T.M. and L.A. were placed with prospective adoptive parents. The placement is meeting the children's needs, the placement and children have developed a bond, and the children have expressed a willingness to be adopted. There was also evidence presented that Father's protective capacities were cause for concern. Accordingly, the court did not err in its best-interests determination.

## CONCLUSION

**¶18**         For the foregoing reasons, we affirm the superior court's termination of Father's parental rights to T.M. and L.A.



AMY M. WOOD • Clerk of the Court
FILED:    AA

6