NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

CHRISTINA B., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, A.J., *Appellees*.

No. 1 CA-JV 21-0169
FILED 11-18-2021

Appeal from the Superior Court in Maricopa County
No. JD38751
The Honorable David O. Cunanan, Judge

**AFFIRMED**

COUNSEL

Czop Law Firm, PLLC, Higley
By Steven Czop
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Jennifer R. Blum
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Samuel A. Thumma delivered the decision of the Court, in which Presiding Judge Jennifer B. Campbell and Judge Maurice Portley joined.[1]

---

**T H U M M A**, Judge:

¶1          Christina B. (Mother) challenges the superior court's order terminating her parental rights to her daughter A.J. Because Mother has shown no error, the order is affirmed.

## FACTS AND PROCEDURAL HISTORY

¶2          Mother is subject to a guardianship with the Maricopa County Public Fiduciary following abuse she suffered as a child. The Department of Child Services (DCS) took A.J. into care shortly after birth in November 2019. DCS' dependency petition alleged that A.J. was dependent given Mother's untreated mental health issues (including self-harm attempts while pregnant) and neglect. In early February 2020, the court found A.J. dependent as to Mother after a "paper trial," adopting a family reunification case plan.[2]

¶3          DCS offered Mother various services including a psychological evaluation, case-aide supervised visits, parent-aide services, counseling and transportation. Mother also self-referred for mental health treatment, counseling and medication management through Community Bridges, Inc. (CBI). In addition, Mother was offered independent living skills, vocational training and food assistance. Mother, however, did not consistently or successfully engage or participate in services.

---

[1] The Honorable Maurice Portley, Retired Judge of the Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article 6, Section 3, of the Arizona Constitution.

[2] The court also found A.J. dependent as to Father at this same hearing. Although Father's parental rights to A.J. later were terminated, he is not a party to this appeal.

¶4            Although Mother initially participated in visits, by February 2020, she struggled to attend, saying that her job prevented her from doing so. When DCS offered weekend visits, Mother did not participate and also did not attend parent-aide sessions. Supervised visits were closed out in March 2020 for lack of participation.

¶5            Mother did not participate in mental-health services for months. In April 2020, an evaluation by a psychologist diagnosed Mother with depressive and trauma-and-stressor related disorders and borderline intellectual functioning. The evaluation added that Mother's prognosis for safely parenting in the foreseeable future was poor given her lack of participation in services. Mother later testified that she was being medicated for depression and bipolar issues. As late as April 2021, however, a DCS caseworker raised doubts that Mother was taking her medications as prescribed, noting past concerns that Mother "struggled to pick up her prescriptions in order to take them as prescribed."

¶6            Father also impeded Mother's progress. The April 2020 psychological evaluation noted Father was limiting Mother's ability to participate in services and was "controlling." Testimony in February 2021, repeated concerns that Father "demonstrates a level of power and control over" Mother "that impacts her ability to safely parent." Other reports of Father's aggressive behavior emerged.

¶7            Although Mother agreed to separate services to diminish Father's influence, she then failed to participate. As a result, a parent-aide referral was closed unsuccessfully in July 2020. After another referral that same month, Mother attended a few skill sessions and inconsistently attended visitation. In October 2020, CBI reported that Mother was inconsistent in engaging in mental-health treatment. Mother also did not meet with her caseworker or others to find housing and she declined domestic violence resources.

**¶8**　　　　At DCS' request, in November 2020, the court changed the case plan to severance and adoption. DCS' motion for termination, filed later that month, alleged six- and nine-months time-in-care and that termination of parental rights would be in A.J.'s best interests. *See* Ariz. Rev. Stat. (A.R.S.) §§ 8-533(B)(8)(a) & (b) (2021).[3]

**¶9**　　　　The court held a severance adjudication in February and April 2021 and granted the motion to terminate, finding DCS had proven both statutory grounds and that severance was in A.J.'s best interests. The court noted that "Mother has tried on and off for periods of time, but she eventually" stops participating "or she goes to Father or she goes into a different path," adding that her participation "is a cycle that repeats itself." This court has jurisdiction over Mother's timely appeal from that ruling pursuant to Article 6, Section 9, of the Arizona Constitution, A.R.S. §§ 8-235(A), 12-2101(A) and 12-120.21(A) and Ariz. R.P. Juv. Ct. 103–04.

## DISCUSSION

**¶10**　　　　As applicable here, to terminate parental rights, a court must find by clear and convincing evidence that at least one statutory ground in A.R.S. § 8-533(B) has been proven and must find by a preponderance of the evidence that termination is in the best interests of the child. *See Kent K. v. Bobby M.*, 210 Ariz. 279, 288 ¶ 41 (2005); *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249 ¶ 12 (2000). Because the superior court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts," this court will affirm an order terminating parental rights as long as it is supported by reasonable evidence. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93 ¶ 18 (App. 2009) (citation omitted).

---

[3] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated. The motion erroneously cited A.R.S. § 8-533(B)(8)(b) for the nine-month time-in-care ground as to Mother, an error also reflected in the findings of fact. The substantive allegations and findings, however, correspond to (B)(8)(a) and the parties proceeded to trial without objection on both nine- and six-month time-in-care grounds.

¶11        Mother does not dispute that A.J. is not yet three years old and was in care for more than nine months at the time of trial. Nor does she challenge the adequacy of the services DCS provided. Mother also does not challenge the best interests finding, which the record supports. Instead, Mother argues that the court erred in finding, at the time of the trial, that she had substantially neglected or willfully refused to remedy the circumstances that caused A.J. to be in care.

¶12        Mother argues that she "participated in every service DCS requested or offered and she maintained appropriate housing." The trial evidence is to the contrary. Although A.J. came into care in November 2019, Mother concedes she lacked "stable housing," was inconsistent in her visits and "struggled with staying consistent with her mental health services" through "the first half of 2020." By her own admission, Mother was homeless during portions of the dependency. And as the trial concluded in April 2021, she was trying to locate new housing given safety issues attributed to Father's family.

¶13        Mother did not consistently engage in mental health services until January 2021, just a month before trial began. The DCS case worker testified in February 2021 that Mother had "strongly attempted to engage in services," adding, however, that "[h]er engagement has been inconsistent." And the record suggests that her participation in services increased as the trial concluded in April 2021. But her reliance on dicta in *Maricopa Cty. Juv. Action JS-501568*, that "appreciable, good faith efforts to comply with remedial programs" is sufficient does not show error here. 177 Ariz. 571, 576 (App. 1994). *JS-501568* affirmed an order terminating the parental rights of a drug-addicted mother. *Id.* In doing so, *JS-501568* declared that when a parent "disappears for months at a time and makes only sporadic, aborted attempts to remedy her addiction in that first year, a trial court is well within its discretion in finding substantial neglect and terminating parental rights on that basis." *Id. JS-501568* also "agree[d] with the trial court" that the mother's "successful efforts at recovery" in the nine months before trial, "while commendable, were 'too little, too late' for purposes of this severance action." *Id.* at 577. To the extent the *JS-501568* analysis applies here, it supports the superior court's conclusion that Mother's engagement in services just before and during trial did not suffice to overcome the court's contrary conclusion.

¶14 Similarly, Mother's reliance on *Marina P. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 326 (App. 2007) does not show error. *Marina P.* involved a dependency where a mother who was not a legal resident undertook persistent, significant efforts to reunite with her children. *Id.* at 327-29 ¶¶ 2-16. At the time of the severance trial, that mother was compliant with services and had secured stable housing for her and her children. *Id.* at 329 ¶¶ 15-16. In reversing a finding that the mother substantially neglected or willfully refused to remedy the circumstances that brought the children into care, *Marina P.* catalogued the mother's persistent efforts to participate in services. In doing so, the court confirmed that the relevant "circumstances" are those "'existing at the time of the severance' that prevent a parent from being able to appropriately provide for his or her children." *Id.* at 330 ¶ 22 (citation omitted).

¶15 Unlike *Marina P.*, in this case, the superior court properly found that, at the time of trial, Mother (1) was under-responsive and inconsistent in her contact with CBI, which provided her mental health treatment services; (2) was not consistently taking her medications; (3) had been diagnosed with various unresolved psychological disorders; (4) had a "poor" prognosis given "her lack of engagement in services;" and (5) was inconsistent in her visits with A.J. As a result, the court found "Mother has not made the necessary behavioral changes nor substantively engaged in services." On this record, Mother has not shown those findings were in error. In addition, those findings, which support a conclusion that Mother had substantially neglected to remedy the circumstances that brought A.J. into care, support the order granting the motion for termination.

¶16 Mother argues DCS failed to tell her that she needed to end her relationship with Father in order to reunify, meaning her failure to do so "cannot be held against" her. Mother has not shown that the superior court based its decision on her remaining with Father. Even if it did, the trial record contains evidence that Mother acknowledged concerns about Father. The trial record shows that DCS told Mother that continuing her relationship with Father created an impediment to her success in parent-aide services. The trial record also shows that Father's actions contributed to Mother losing her job and having housing issues. This trial evidence shows Mother was apprised that continuing her relationship with Father could likely impede her efforts to reunify with A.J.

¶17　　　　To be sure, there was conflicting trial evidence. Mother's testimony differed -- at times substantially -- from other trial evidence. This court, however, reviews the evidence in the light most favorable to upholding the termination order. *Manuel M. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 205, 207 ¶ 2 (App. 2008). And the superior court at trial, not this court on appeal, weighs conflicting evidence, assesses witness credibility and resolves disputed facts. *See Jordan C.*, 223 Ariz. at 93 ¶ 18. It is for these reasons that this court accepts the superior court's factual findings if supported by reasonable evidence, and affirms a severance order unless it is clearly erroneous. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280 ¶ 4 (App. 2002). Applying these standards, the superior court's conclusion that Mother had cycles of instability and of participating in services is supported by the trial record. Accordingly, Mother has not shown that the order granting severance based on nine-months time-in-care was error.[4]

## CONCLUSION

¶18　　　　The order terminating Christina B.'s parental rights to A.J. is affirmed.



AMY M. WOOD • Clerk of the Court
FILED:　　AA

---

[4] Given this determination, this court need not and expressly does not address Mother's arguments challenging the finding that DCS also proved severance based on six-months time-in-care. *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280 ¶ 3 (App. 2002).