NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

LISA R., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, A.H., W.R.,
*Appellees.*[1]

No. 1 CA-JV 22-0141
FILED 1-5-2023

Appeal from the Superior Court in Maricopa County
No. JD32491
The Honorable Robert Ian Brooks, Judge

**AFFIRMED**

COUNSEL

Maricopa County Public Advocate's Office, Mesa
By Suzanne Sanchez
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Bailey Leo
*Counsel for Appellee Department of Child Safety*

---

[1] We amend the above caption and order it be used on all future documents filed in this matter.

---

**MEMORANDUM DECISION**

Vice Chief Judge David B. Gass delivered the decision of the court, in which Presiding Judge Samuel A. Thumma and Judge Cynthia J. Bailey joined.

---

**G A S S**, Vice Chief Judge:

¶1         Mother appeals the superior court's order terminating her parental rights to two of her biological children, A.H. and W.R. Each child has a different father. The fathers are not parties to this appeal. Because reasonable evidence supports the superior court's order, we affirm.

**FACTUAL AND PROCEDURAL HISTORY**

¶2         This court views the evidence, and reasonable inferences drawn from it, in the light most favorable to sustaining the superior court's decision. *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 282, ¶ 13 (App. 2002).

¶3         Mother is the biological parent of six children, including A.H. and W.R. Only A.H. and W.R. are parties to this appeal. In April 2016, the superior court found A.H. dependent as to mother and A.H.'s father, because mother engaged in domestic violence and had untreated mental health issues. In October 2017, the superior court dismissed the dependency and reunited A.H. with mother.

¶4         In October 2019, the Department of Child Safety (DCS) filed a second dependency petition for A.H. alleging mother was "unable or unwilling" to parent A.H. based on the child's behavior. DCS implemented a safety plan in which DCS designated mother's then-boyfriend as a responsible adult charged with monitoring all contacts between mother and A.H. In January 2020, DCS removed A.H. from mother's care and placed A.H. in foster care. The superior court granted DCS's motion to formalize the change in physical custody because mother's then-boyfriend violated the safety plan, mother had been evicted from her apartment, and she could not provide any proof of housing. In February 2020, the superior court again found A.H. dependent and adopted a family-reunification case plan.

¶5         In September 2020, mother gave birth to W.R. Later that month, DCS filed a dependency petition for W.R. alleging mother neglected W.R., did not have stable housing, had untreated mental health issues, and

was "unable or unwilling" to provide proper parental care to W.R. In December 2020, the superior court found W.R. dependent as to mother and W.R.'s father when they both pleaded no-contest to DCS's allegations. In February 2021, the superior court affirmed a family-reunification case plan and found out-of-home care necessary because of mother's depressive disorder, anger management issues, and children's safety when in her care.

¶6        Mother subsequently moved to have the children placed in her physical custody, and in August 2021, the superior court held an evidentiary hearing on the motion. In denying the motion, the superior court said, "Mother's minimization of domestic violence along with her lack of candor . . . poses a significant risk of harm to the children because [m]other is unable to recognize harmful situations, unable or unwilling to directly address them, and unwilling to work with [DCS] to mitigate the risk." The superior court observed the children would be at substantial risk of harm if returned to her care.

¶7        In October 2021, a DCS-appointed psychologist opined mother had made minimal progress since her last evaluation. Moreover, mother cancelled multiple scheduled visits, preventing the children from visiting each other as well. In April 2022, after the court changed the case plan to severance and adoption, DCS moved to terminate mother's parental rights as to A.H. and W.R. based on 15-months out-of-home placement. *See* A.R.S. § 8-533.B.8(c).

¶8        In May 2022, the superior court held an initial hearing on the motion to terminate, which mother failed to attend. The superior court found DCS had served mother the motion, but she failed to appear without good cause. Consequently, the superior court deemed mother to have admitted the facts DCS alleged in its motion to terminate parental rights. The superior court then heard evidence. The DCS case manager testified mother did not fully participate in services and had only submitted two out of ten required urinalysis tests in March and April 2022. The case manager also testified each of the children's placements were meeting the children's needs. W.R. was in an adoptive placement, and though A.H. was not in an adoptive placement, DCS considered her an "adoptable" child and was making efforts to find an adoptive home.

¶9        The superior court terminated mother's parental rights as to both children on the 15-month out-of-home placement ground. Mother timely appealed. This court has jurisdiction under article VI, section 9, of the Arizona Constitution, and A.R.S. §§ 8-235.A, 12-120.21.A.1, and 12-2101.A.1.

**ANALYSIS**

**¶10** Because mother does not challenge the statutory grounds for termination, she has abandoned that argument. *See Crystal E. v. Dep't of Child Safety*, 241 Ariz. 576, 577, ¶ 5 (App. 2017). Instead, mother focuses her appeal on the best interests findings.

**¶11** Parental rights are fundamental, but not absolute. *Dominique M. v. Dep't of Child Safety*, 240 Ariz. 96, 97, ¶ 7 (App. 2016). After finding the state has proven by clear and convincing evidence a termination ground, the superior court must then find by a preponderance of the evidence termination serves the children's best interests. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 149–150, ¶ 8 (2018). This court reviews the superior court's decision to terminate parental rights for an abuse of discretion. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004). Because the superior court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts," this court will affirm an order terminating parental rights if reasonable evidence supports the order. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009) (citation omitted).

**¶12** Termination is in the children's best interests if either the termination will benefit the children or failing to terminate will harm the children. *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4, ¶ 16 (App. 2016). The superior court must prioritize the children's "interest in stability and security." *Alma S.*, 245 Ariz. at 150, ¶ 12.

**¶13** Mother broadly asserts "no reasonable evidence supports the [superior] court's findings." But the DCS-appointed psychologist expressed concerns mother had not made sufficient progress and lacked awareness of what she needed to be a "capable, consistent, and stable parent." The psychologist further opined mother's personality disorder resulted in "repeated, self-defeating activities and chronic difficulty in grasping reality."

**¶14** In evaluating the children's best interests, the superior court concluded mother was "no nearer to reunification [that day] than she was at the outset of this matter." The superior court found mother was minimally participating in services and continued to minimize her history and nature of domestic violence. The superior court recognized mother's relationship with the children but noted mother's ongoing "severely diminished insight" as to parenting. Waiting indefinitely for mother to become a capable and effective parent does not serve the children's best

interests. *See Maricopa Cnty. Juv. Action No. JS-501568*, 177 Ariz. 571, 577 (App. 1994).

**¶15** Even so, mother argues the entire best-interests determination is based on adoption plans because the superior court weighed the availability of an adoptive placement in both its benefit and detriment analysis. The superior court also recognized the children's existing placement was meeting their needs. *See Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 377, ¶ 5 (App. 1998). The superior court found W.R. was in an adoptive placement and though A.H. was not, DCS was making efforts to locate one and A.H. was adoptable. The superior court did not abuse its discretion by considering the availability of adoptive placement in its best-interests calculus. *See id.* (noting factors showing a benefit include "the immediate availability of an adoptive placement").

**¶16** The superior court also found the children would "linger in foster care for an indeterminate period of time" if it did not terminate mother's parental rights. That finding is consistent with the superior court's 15-month out-of-home placement ground for termination, which required the superior court to find by clear and convincing evidence "there is a substantial likelihood [mother] will not be capable of exercising proper and effective parental care and control in the near future." A.R.S. § 8-533.B.8(c); *see Alma S.*, 245 Ariz. at 149–150, ¶ 8.

**¶17** Mother argues termination of her parental rights would not stop A.H. from "lingering in foster care" because the parent-child relationship between A.H. and her father remains intact. But DCS has moved to terminate A.H.'s father's rights, and the superior court found DCS was making efforts to locate an adoptive placement for A.H. Because DCS need only show adoption is "legally possible and likely," DCS met its burden. *Demetrius L.*, 239 Ariz. at 4, ¶ 12.

**¶18** Next, mother contends the superior court did not consider "the totality of circumstances." But mother then concedes the superior court did indeed "consider[] the totality of circumstances, including the loving bond between [m]other and [A.H.]" but argues "reasonable evidence does not support proper consideration of *other* circumstances." (Emphasis added.) Mother identifies no other circumstances the superior court should have considered. This argument, thus, fails.

**¶19** Mother further asserts the adoption plan—for separate foster parents to adopt each child—is not in the children's best interests because it would separate the siblings. Though placing siblings together is an

important consideration, other factors such as stability, security, health, and safety are paramount. *Id.* at 4, ¶ 15; Ariz. R.P. Juv. Ct. 301(b).[2] In short, though placing the siblings together can be a benefit, the converse—separately placing siblings—is not necessarily a detriment. Both types of placements can be in the children's best interests.

**¶20**      Based on the above, reasonable evidence supports the superior court's best-interests findings.

**CONCLUSION**

**¶21**      We affirm.



AMY M. WOOD • Clerk of the Court
FILED: AA

---

[2] Rule 301(b) abrogated former Rule 36 on July 1, 2022. Rule 301(b) is substantively identical to the former rule.